## 12063

MILLER, ADMINISTRATOR, v. ATLANTIC COAST LINE RAIL-
ROAD COMPANY *ET AL.*

(138 S. E., 675)

1. RAILROADS—WHETHER TRAIN UNNECESSARILY AND FOR UNREASON-
ABLE TIME OBSTRUCTED CROSSING WITHOUT HEADLIGHTS, SAFE-
GUARDS, OR WARNING HELD FOR JURY.—Whether train obstructed
highway crossing unnecessarily and for an unreasonable length of
time, and whether it was without headlights, safeguards, or warn-
ing to the public of such obstruction, *held* question for jury.

2. RAILROADS—NEGLIGENCE IN OPERATING TRAIN, INJURING AUTOMO-
BILE PASSENGER AT CROSSING, HELD FOR JURY.—In action for death
to passenger in automobile in collision with train at public cross-
ing, evidence *held* sufficient for jury.

3. RAILROADS—PUBLIC MUST BE PROTECTED WHERE HIGHWAY CROSSES
TRACK.—Public has a right to be protected where a highway crosses
railroad track.

4. MASTER AND SERVANT—ACQUITTAL OF SERVANT IS NOT DISCHARGE
OF MASTER, WHERE SERVANT WAS NOT ONLY AGENCY COMMITTING
WRONG.—Where servant or employee sued was not only agency
under pleading or evidence which could have committed wrong,
then acquittal of servant is not discharge of master.

5. RAILROADS—RAILROAD MUST GIVE SIGNALS REASONABLY SUFFICIENT,
IN VIEW OF PECULIAR SITUATION AND SURROUNDINGS.—It is the
duty of railroad to give such signals at public crossing as may be
reasonably sufficient, in view of peculiar situation and surround-
ings at time, and as will give public and individuals warning of
approach and guard them against injury.

6. RAILROADS—ORDINARILY REQUIREMENT OF FLAGGING AT CROSSING ON
ACCOUNT OF DANGER IS FOR JURY.—Ordinarily whether particular
crossing is required to be flagged in exercise of ordinary prudence,
on account of circumstances of extraordinary danger, is question
for jury.

7. RAILROADS—WHETHER TRAIN OBSTRUCTING CROSSING AT TIME OF
COLLISION OF AUTOMOBILE WITH ANOTHER TRAIN WAS OPERATED

NOTE: As to province of Court and jury on the question of proximate
cause, see 22 R. C. L., 148, *et seq.;* 3 R. C. L., Supp., 1240; 4 R. C. L.,
Supp., 1458; 5 R. C. L., Supp., 1196; 6 R. C. L., Supp., 1318.

As to violation of statute or ordinance in relation to blocking rail-
road crossing as affecting liability for injury, see annotation in 47
L. R. A. (N. S.), 821 *et seq.;* 15 A. L. R., 904; 22 R. C. L., 994; 3
R. C. L. Supp., 1299; 4 R. C. L. Supp., 1482; 6 R. C. L. Supp., 1346.

On liability of railroads for neglect of statutory duty as to signals
at crossings, see annotation in L R. A., 1915-E, 533; 22 R. C. L., 999.

In Violation of Law Held for Jury (Civ. Code 1922, § 4898).—
In action for death of passenger in automobile in collision with train
at public crossing, alleged to have been due to negligence of
another operating train thereon obstructing crossing, question of
whether such train obstructing crossing was being operated in
violation of Civ. Code 1922, § 4898, held .properly submitted to
jury.

8. Railroads—Lessor and Lessee, Licensor and Licensee, Held Re-
sponsible for Damages from Operation of Railroad.—Both lessor
and lessee, licensor and licensee, are responsible for any damages
arising out of operation of railroad.

9. Negligence—Proximate Cause is for Jury, Unless Evidence is
Susceptible of Only One Rational Inference.—Ordinarily ques-
tion of proximate cause is for jury, and is decided by Court only
when evidence is susceptible of only one rational inference.

10. Railroads—Whether Blocking Crossing Without Lights or Pro-
tection was Contributing Cause to Collision Between Automo-
bile and Another Train Held for Jury.—Where there was evi-
dence that train blocked main business crossing in· town without
lights or protection to public for an unreasonable length of time,
creating a dangerous and deceptive condition, it was for jury to
determine whether,· in natural ordinary sequence, such condition
was one of direct contributing causes to collision on such crossing
between automobile and another train.

11. Railroads—Railroad May Not Obstruct Highway Unnecessarily
or Unreasonably (Civ. Code 1922, § 4983).—Under Civ. Code
1922, § 4983, a railroad owes a duty to the public of not obstruct-
ing highway which crosses it unnecessarily or unreasonably.

12. Railroads—Whether ·Crossing' was Obstructed Unnecessarily for
Unreasonable Time Held .for Jury.—Whether public crossing
was obstructed by train for unnecessary and unreasonable length
of time held properly submitted to jury.

13. Railroads—Omission of Statutory Signals by Train Obstructing
Crossing Warrants Submission of Negligence and Willfulness
(Civ. Code 1922, §§ 4903, 4925).—Failure of train obstructing
public crossing to give statutory signals warrants submission of
issue of negligence and willfulness to jury, under Civ. Code 1922,
§§ 4903, 4925.

14. Trial—Court Can Direct Verdict Only When Facts· are Un-
disputed, or There Could be No Difference as to Inferences
from Testimony.—Court can only direct a verdict when facts are
undisputed, or reasonable men cannot differ as to inferences to be
drawn from testimony.

15. Railroads—Failure to Give Statutory Signals at ·Crossing· is
"Negligence Per Se."—Railroad's violation of statute as to giving
of signals at a public crossing is "negligence per se."

16. Railroads—Issue is for Jury, if Evidence is Susceptible of Inference That Railroad's Negligence was Proximate Cause of Injury.—If evidence in action for death of passenger in automobile in collision with train at public crossing is susceptible of inference that negligence of defendant was proximate cause of injury, then issue is for jury.

17. Railroads—Evidence of Railroad's Habitually Blocking Crossing Warrants Submission of Question of Willfulness.—Evidence that railroad's blocking of public crossing was habitual is sufficient at common law to warrant submission to jury of question of willfulness.

18. Pleading—Statutes Claimed to Have Been Violated by Railroad Need Not be Expressly Referred to as Bearing on Willfulness or Recklessness.—It is not necessary to expressly refer to various statutes violated by railroad as bearing on question of whether such violation constituted willfulness or recklessness, being only necessary to make a case bringing defendant within liability created by statute.

19. Action—Action for Wrongs Under Statute May be Combined With One for Other Wrongs.—An action for wrongs under statute may be combined with one for wrongs outside of statute.

20. Negligence—Automobile Driver's Negligence is Not Imputable to Guest.—Negligence of automobile driver cannot be imputed to guest.

21. Appeal and Error—Judgment Will Not be Reversed Because of Admitting Questionable Testimony, When Verdict was Supported by Competent Testimony.—Judgment will not be reversed because some questionable testimony was allowed, when there is a large sufficiency of competent testimony to support verdict.

22. Death—$50,000.00 for Death Held Not Excessive.—$50,000.00 for death of automobile passenger in collision with train at public crossing *held* not so gross and excessive as to require that it be set aside.

On Petition for Rehearing

23. Railroads — Adding Words "Unnecessary or" to Request for Charge on Negligence in Obstructing Crossing for "Unreasonable" Time Held Not Error. — In action for death of automobile passenger at public railroad crossing in collision with train at time crossing was obstructed by another train, Circuit Judge's adding words "unnecessary or" to defendants' request to charge on such obstruction for "unreasonable" length of time as constituting negligence or willfulness *held* not reversible error, in that it operated rather in favor of defendants, since delay may be necessary and yet unreasonable, in that, if made necessary by party chargeable therewith, such delay is in legal contemplation unreasonable, however necessary it may have been.

24. RAILROADS—REFUSING CHARGE THAT DEFENDANTS COULD NOT HAVE REASONABLY ANTICIPATED COLLISION FROM OBSTRUCTING RAILROAD CROSSING, AND SUBSTITUTING WORDS "SOME INJURY," HELD NOT ERRONEOUS.—In action for death of automobile passenger in collision with train at public crossing at time crossing was obstructed by another train, refusal of request to charge containing expression that "defendants could not have reasonably anticipated collision would result from obstruction," and substituting words "some injury to travelers on highway," *held* not erroneous, in that it is not necessary that party to be liable for negligence should have contemplated or anticipated particular consequences.

25. RAILROADS—CHARGE HELD TO HAVE LEFT MATTER OF PROXIMATE CAUSE TO JURY, AND REQUIRED PLAINTIFF TO PROVE VIOLATION OF STATUTE WAS PROXIMATE CAUSE OF COLLISION BETWEEN TRAIN AND AUTOMOBILE.—Charge in action for death of automobile passenger in collision with train at railroad crossing *held* to have left matter of proximate cause to jury, and plainly required that plaintiff must prove by greater weight of evidence that violation of statute was proximate cause of injury.

26. COURTS—OPINION NEED NOT NAME EVERY EXCEPTION BY NUMBER, BUT IS COMPLETE IF IT DISCLOSE DECISION OF DETERMINATIVE QUESTIONS OF APPEAL.—It is not essential on appeal to name every exception by number in writing an opinion, and is only necessary to consider and decide questions really determinative of appeal.

27. RAILROADS—COMPLAINT HELD TO SUFFICIENTLY CHARGE CODEFENDANTS WITH OBSTRUCTING RAILROAD CROSSING IN VIOLATION OF LAW. Complaint in action for death of automobile passenger in collision at public crossing, alleging that one defendant and its employee, with consent and approval of its codefendant, maintained train of cars obstructing crossing unnecessarily, *held* to have sufficiently charged both such defendant and its employee with wrongdoing.

28. RAILROADS—ALLEGATION TRAIN OBSTRUCTED PUBLIC CROSSING WITHOUT SAFEGUARDS, LIGHTS OR WARNINGS HELD SUFFICIENT ALLEGATION OF INSUFFICIENCY OF HELP ON TRAIN.—In action for death of automobile passenger in collision with train at public crossing, allegation in complaint that train was obstructing crossing without any safeguards, lights, or warnings to public of such obstruction *held* sufficient allegation as to there being an insufficiency of help on such train obstructing crossing.

Before TOWNSEND, J., Richland, May, 1924.    Affirmed.

Action by S. Lyles Miller, administrator of the estate of D. B. Miller, deceased, against the Atlantic Coast Line Railroad Company, the Camp Manufacturing Company,

and others.    Judgment for plaintiff against defendants named and said defendants appeal.    Affirmed.

The Atlantic Coast Line Railroad Company's motion for new trial was made on the following grounds:

A. The verdict in this case is grossly excessive and could have been based only upon passion and prejudice.

B. The verdict of the jury in favor of Engineer Johnson of the Atlantic Coast Line Railroad Company and Engineer Pulley of the Camp Manufacturing Company, having established that these agents and servants were guiltless of charges of negligence, and the corporate defendants having been held solely through the alleged negligence of these employees, the finding of the jury against these defendants should be set aside and a new trial ordered.

C. Under the allegations of the complaint and the charge of the Court, the jury might have found a verdict against the Atlantic Coast Line Railroad Company, Camp Manufacturing Company, and Arthur Pulley for the alleged negligent obstruction of the crossing on the ground as alleged that the Atlantic Coast Line Railroad Company acquiesced in and permitted those defendants to obstruct the crossing, the finding in favor of Pulley discharges from liability his principal, Camp Manufacturing Company, and the Atlantic Coast Line Railroad Company, which latter cannot be held liable for the mere acquiescence and approval of the act for which its codefendants are discharged from responsibility.

The defendant Camp Manufacturing Company moves for judgment and to set aside the verdict herein upon the following grounds:

(1) Because the verdict exonerated Arthur Pulley from liability, and, if there was any delict of this defendant, the same was committed solely through the agency of its engineer, the said Arthur Pulley.

(2) Because the evidence shows that, if the defendant Arthur Pulley did not commit the tort alleged against this

defendant and the said Arthur Pulley, then there was no such tort committed, and a verdict against this defendant alone cannot stand.

(3) Because the verdict was contrary to the charge of the presiding Judge, in that it clearly appeared from the charge that the liability of this defendant was dependent upon the liability of Arthur Pulley. Judgment should be entered in favor of this defendant on the foregoing grounds; but, failing in this, we ask for a new trial on same grounds and the following:

(4) Because the overwhelming weight of the evidence shows that the *alleged delict* of this defendant was not a *proximate cause* of the death of plaintiff's intestate.

(5) Because the amount of the verdict against this defendant is grossly excessive.

The order overruling appellants' motions for new trial reads as follows:

Motions for judgment in favor of each of the corporation defendants, and failing in that for a new trial, on the written grounds hereto attached and filed herewith, have been heard before me. I have examined the transcript of the stenographer's notes on the trial which have been furnished me.

There was evidence tending to show that the death of the plaintiff's intestate was proximately caused by negligence on the part of the railroad company, through its station agent, Clintworth, in unnecessarily and negligently obstructing and permitting the obstruction by its licensee of a highway crossing in the Town of St. Stephens, for 10 or 15 minutes, without using *any safeguards* to warn travelers on the highway of such obstruction, and by the negligence of the manufacturing company, whose train of flat cars obstructed the crossing, in omitting any safeguards for the protection of travelers, while the track was so obstructed. Bowen, the colored fireman, employed by the manufacturing company to flag its train, when necessary, did not perform such duty

on the occasion in question, and no precautions for the
safeguard of the public were taken by the manufacturing
company.    The night was dark and rainy; one witness
testified she did not discover the presence of the flat cars
upon the track until within six feet of them.    The track on
which they stood was about three feet higher than the street,
and the driver of the automobile in which the deceased was
riding testified that they did not know the crossing was
blocked until they got up the incline and on the main track,
when, as the witness Harris testifies, the light of the automo-
bile came down and shone against the obstructing cars—too
late for the driver to avoid the collision with the train then
approaching on the main track.    The defendant Johnson,
engineer in charge of the approaching train, testified, if there
had been nothing to stop the automobile on the crossing—
that is, no obstruction—it would have gotten clear across
before, and avoided, the collision.    Hence the failure to
give notice of the presence of the flat cars obstructing the
track was the proximate cause of the death of plaintiff's
intestate.

For these reasons, I think there is sufficient evidence in
the case to sustain the verdict against the corporation de-
fendants.

As to the size of the verdict, the deceased was a young
man of high character with excellent prospects for the
future.    The plaintiff, his father, has other children to care
for, and in view of the fact that the jury is to give such
damages as they may find proportionate to the injury I do
not think the verdict excessive.

The motions for judgment in favor of defendants and
for a new trial are refused: and it is so ordered.    It is
ordered that the plaintiff have leave to forthwith enter up
judgment upon the verdicts in his favor.    It is further or-
dered that, inasmuch as the judgment against the railroad
company will have a statutory lien to secure it, in the event
of an appeal from said judgment, such appeal shall act as

a supersedeas and stay the issuance of execution against the railroad company during the pendency of the appeal.

An appeal by the manufacturing company shall not operate as a supersedeas, unless that company shall give the usual appeal bond in the sum of $29,000 for the payment of the judgment, interest, and costs against it, in the event that the judgment appealed from should be affirmed.

The exceptions of the Atlantic Coast Line Railroad Company here follow:

(1) The Court erred in refusing to enter judgment for the Atlantic Coast Line Railroad Company, since the verdict of the jury exonerating Pulley, the engineer in sole charge of the Camp Company train, necessarily exonerated his principal and the Atlantic Coast Line Railroad Company, which was charged with negligence and willfulness in permitting and acquiescing in Pulley's act of obstructing the crossing.

(2) The Court erred in refusing to set aside the verdict rendered, since the exoneration of Pulley, the engineer of the Camp Company train, which was obstructing the crossing, rendered inconsistent a finding against the corporate defendants; the Camp Company being responsible solely by reason of his acts and the railroad company being responsible solely for permitting and acquiescing therein.

(3) The Court erred in overruling the motion for new trial in holding that the death of plaintiff's intestate "was proximately caused by negligence on the part of the railroad company through its station agent, Clintworth, in unnecessarily and negligently obstructing and permitting the obstruction by its licensee of a highway crossing in the Town of St. Stephens for 10 or 15 minutes without using any safeguards to warn travelers on the highway of such obstruction," there being no basis for holding it liable on such ground either in the pleadings or the evidence.

(4) The Court erred in refusing to direct a verdict for the Atlantic Coast Line Railroad Company on the ground

that there was not sufficient evidence to go to the jury as to the negligence or willfulness on the part of the railroad company which could operate as the proximate cause of the injury.

### GENERAL EXCEPTIONS

(1) Because the Court erred, it is respectfully submitted, in refusing to grant these defendants' motion to .direct a verdict on the ground that the evidence conclusively shows, and no other reasonable inference can be drawn therefrom; that, even if there was any negligence or willfulness on the part of these defendants, the sole proximate cause of the death of plaintiff's intestate was the gross negligence of the driver of the automobile in entering upon the railroad track and attempting to cross the same without looking and listening effectively, because by the reasonable use of his senses he would have seen and heard the train fast approaching.

(2) Because the Court erred, it is respectfully submitted, in refusing these defendants' motion for a directed verdict upon the ground that the evidence conclusively shows, and no other reasonable inference can be drawn therefrom, that the driver of the automobile was guilty of gross contributory negligence in entering upon the railroad track without effectively using his senses of sight and hearing, because, if he had done so, he would have seen and heard the train fast approaching, and there was nothing in the circumstances surrounding same which would have prevented such exercise of his senses.

(3) His Honor erred in refusing to direct a verdict on behalf of the defendants, since the only reasonable inference to be drawn from the entire testimony was that deceased came to his death by reason of his own gross and willful contributory negligence in failing properly to maintain a lookout for his own safety when going into a known place of danger, and when by the exercise of even slight care the impending peril must have been discovered.

(4) Because the Court erred, it is respectfully submitted, in allowing the witness Pinckney to testify over defendants' objection that the witness Huggins stated in his presence that the accident would not have happened if the crossing had not been blocked by the Camp train, in that one of the principal issues in the case was as to the proximate cause of the injury, and such an expression of opinion by a witness outside of Court was incompetent and highly prejudicial to these defendants.

(5) Because the Court erred, it is respectfully submitted, in charging the jury as follows: "In order that an injury be the proximate result of an act, it is not necessary that the actor should have foreseen the particular consequences or injury which resulted. It is enough if he should have foreseen that his act, if negligent, would probably result in injury of some kind to some one to whom he owes a duty"—in that the law of proximate cause requires an unbroken sequence between the prime act of negligence and the injury, and where one might have foreseen that his act, if negligent, would probably result in injury of some kind to some one to whom he owes a duty, yet, if an active cause intervened between the prime act and the injury, producing the injury, the prime act could not be deemed the proximate cause, unless the intervening act itself was a result reasonably to have been expected from the prime act.

(6) Because the Court erred, it is respectfully submitted, in refusing to charge without modification the Camp Manufacturing Company's first request to charge, which was as follows: "The use of a railroad side track for shifting cars or loading and unloading freight is a lawful use, and cannot be considered negligence or willfulness, even if a highway is temporarily obstructed thereby, unless such obstruction is for an unreasonable length of time, considered with reference to the existing circumstances." The Court charged the request with the addition of the words italicized, as follows: "The use of a railroad side track for shifting

cars or loading and unloading freight is a lawful use, and cannot be considered negligence or willfulness, even if a highway is temporarily obstructed thereby unless such obstruction *is unnecessary or* for an unreasonable length of time, considered with reference to the existing circumstances"—the error being that the obstruction of a highway for lawful purposes for a reasonable length of time is not negligence or willfulness, even if there is no absolute necessity for such obstruction.

(7) The trial Judge charged as follows: "In considering whether or not the failure to look or listen was negligence, the jury may take into consideration any evidence, if any there should be, showing the presence of some imminent danger or emergency not brought about by the traveler's own negligence, or the presence or influence of unusual or extraordinary conditions not created or controlled by the traveler .himself, and especially such conditions brought about by the railroad company along with any and all other evidence in the case." This constituted error in that there was no contention or evidence of conditions creating an emergency before plaintiff's intestate went upon the railroad tracks, and nothing which would lessen the duty of the deceased and the driver of the car to· ascertain whether to proceed was safe.

(8) In overruling motion for new trial the Court held as follows: "Bowen, the colored fireman employed by the manufacturing company to flag its train when necessary, did not perform such duty on the occasion, and no precautions for the safeguard of the public were taken by the manufacturing company." This finding constituted error in that the only evidence in the case established that the defendant Pulley was in full charge of the train of the Camp Manufacturing Company, and that the negro fireman, Bowen, was subject to his orders, and that under Pulley's direction Bowen was on his way from the engine to the freight house to assist in the loading of the freight into the

box car; hence, no negligence could be attributed to Bowen, and, the verdict of the jury having exonerated Pulley, no negligence could be attributed to Camp Manufacturing Company.

(9) The Court charged the jury as follows: "If the jury find that the plaintiff is entitled to recover against the defendants or either or one of them, the jury will ascertain as nearly as possible the reasonable value of the life of the intestate, and in so doing may consider any evidence as to the age of the intestate, his probable expectancy of life, his health, his habits of industry, economy, and thrift, if there be such in the case, and give such sum as would be a reasonable measure of the actual value of his life and of the loss to his father. Such damages, if proven, are called 'actual damages.' " This constituted error in that it failed to limit the consideration of loss to the life or expectancy of the father, and warranted the jury in making the basis of its finding the expectancy of the son, and invited an unlimited finding, whereas the true measure of damages was the pecuniary loss actually sustained by the father.

(10) Under the evidence in this case, the verdict of the jury for $50,000 actual damages, the full amount prayed for, was sufficiently gross and excessive to shock the conscience of the Court, and his Honor erred in refusing to set aside or reduce same.

The Judge's charge to the jury, reproduced from the printed "case," with the folio number marginally inserted at the left, with a *showing where the folio began (thus, 915], with *following in same line), is here set forth:

915] *Mr. Foreman and Gentlemen of the Jury:

It is admitted that on the 19th day of December, 1922, D. B. Miller, the son of the plaintiff, who is his administrator, was being conveyed and transported in an automobile in and upon a public highway in the Town of St. Stephens, in Berkeley County, in this State, when, at a crossing of said highway, and over the Atlantic Coast Line R. R. tracks,

he was struck, run over and killed, by a train of the defendant, Atlantic (916]) Coast Line *R. R. Company, and that said D. B. Miller died without having made a' will—or intestate—and leaving surviving him, the plaintiff, his father, for whose benefit this action is brought.

917] *The evidence that plaintiff is the Administrator of the estate of said D. B. Miller, deceased, is uncontradicted and undisputed.

It is admitted that the Atlantic Coast Line Railroad Company, and the Camp Manufacturing Company are corporations; the Atlantic Coast Line Railroad Company claims that it is a corporation organized and existing under the laws of the State of Virginia, and that it is a citizen of that State; and that the Atlantic Coast Line Railroad Company has and operates (918]) lines of railway in *and through the Town of St. Stephens, in Berkeley County, in this State, and that the defendant, Johnston, is a resident of Florence County; that Arthur Pulley was a resident of Berkeley County, and that the Camp Mfg. Co. was then engaged in operating a logging railroad, which connects with the railroad of the Atlantic Coast Line Railroad Company at or in the Town of St. Stephens; and that Railroad Company and Johnston admit that Johnston was the engineer in charge of the engine operating Atlantic Coast, Line R. R. Com- (919]) pany's train which *collided with the automobile in which Miller was riding.

The Camp Mfg. Co. and Pulley admit that Pulley was the engineer in charge of the logging train of the Camp Mfg. Co. at the time of the occurrence, causing the death of Mr. D. B. Miller.

The plaintiff seeks to recover damages, both actual and punitive, from all the defendants, except Fowler, whom he now admits had nothing to do with the occurrence in which Mr. Miller (920]) was killed, and as to whom the *action has been discontinued, on the ground that the collision and death of D. B. Miller occurred, as plaintiff claims and al-

leges, as a proximate result of the alleged negligent, wilful and wanton acts of the Camp Mfg. Company, Arthur Pulley, an engineer employed by said Mfg. Co. to run its log train, and of the Atlantic Coast (921]) Line Rail*road Company, in obstructing said crossing of a public road or highway over the tracks of the Atlantic Coast Line R. R. Company in the Town of St. Stephens, by there placing and keeping, and permitting to be there placed and kept, a train operated by said Mfg. Company, to haul logs unnecessarily, and for an unreasonable length of time so as to obstruct the passage over the crossing, and without any safeguards, lights or warnings to the public of any such obstruction.

922]    *The defendants deny that they were either negligent or wilful or wanton in any of these particulars alleged in the complaint, and the plaintiff must prove by the greater weight of the evidence that one or more of the defendants was guilty of one or more of the alleged wrongful acts, and that such wrongful act on the part of any particular one or more of the defendants, if any, held guilty of such wrongful acts, caused the death of plaintiff's intestate, before you could find a verdict in favor of the plaintiff on account of such wrongful act (923]) *or omission.

An absence of ordinary care toward the public using the crossing would be negligence.   Wilfulness and wantonness would be a conscious and intentional doing of an act, which the actor knew at the time he did it was in violation of his known duty toward travelers using the public road or highway.   It is the duty of a railroad company, whose tracks cross a public road or highway, to use ordinary care for the safety of (924]) the ap*proaches on the highway to the crossing, and if it permitted another so to use its tracks as to negligently obstruct the passing of travelers on the public way, both the parties so obstructing such passage and any railroad company so permitting it would be equally liable to a traveler on the public highway, if injured thereby.

925]   *An obstruction is some object in a road or way ·
that materially interferes with, or makes, its passage diffi-
cult, or prevents the passage.    A railroad company or a
manufacturing company or any other person, who obstructs
a highway unnecessarily and for an unreasonable length of
time, would be guilty of negligence toward travelers on the
highway.    Whether one obstructing a highway was or
was not negligent would depend upon how great or material
or dangerous an obstruction was, and how (926]) *long
the obstruction; if it existed, was continued; and whether
or not such continuance was or was not longer than was
reasonably necessary to . the person or corporation so ob-
structing such highway.    Such questions would have to be
determined from any and all evidence, taking into considera-
tion the use made of the crossing in question by the public,
and its surroundings at the particular time in question.    So,
if you should determine from the evidence that a logging
train of the manufacturing company, on the tracks of the
Atlantic Coast Line (927]) Railroad *Company, did ob-
struct the crossing of the public highway in question over
said track, you should next inquire and determine from any
evidence in the case, whether or not the party or parties so
obstructing such crossing, was, or were, either negligent or
wilful or wanton in so doing, and also what, if any, warn-
ing or notice of such obstruction, if it existed, the defend-
ants or any of them should, in the exercise of ordinary care,
have given to the travelers on the highway, and what, if any,
(928]) safe*guards ordinary care toward travelers on the
highway required the defendants, or any of them, to take;
and then you should determine from the evidence, if any
there is, whether or not the defendants, or any of them,
were negligent toward plaintiff's intestate in failing to take
such care, and whether or not (929]) they, or any of them,
*wilfully or wantonly failed to observe due care under such
circumstances, as you may find from the evidence, existed
toward plaintiff's intestate; and if so, did any such act of

negligence or wantonness or wilfulness on the part of the defendants, or any of them, contribute as a proximate cause to the death of the plaintiff's intestate?

The defendants deny all these allegations in the complaint, and the plaintiff must prove them by the greater weight of the evidence be (930]) fore they, or any of them, *would give him a right to recover damages.

The public roads and highways of the State are intended for the use of those having occasion to pass on and along the same, and such persons have a right to pass along such highways free from unreasonable or unnecessary obstruction or interference.

If a person or corporation negligently, unreasonably and unnecessarily obstructs a public highway or crossing, and thereby renders the use of such highway or crossing dangerous, such (931]) person or corporation would be liable *for any injury or damage resulting from such obstructing as the proximate cause thereof, if the person so injured or damaged did not contribute to his injury or damage by his own negligent, wilful, wanton or reckless act.

If the jury find from the evidence by the greater weight thereof that the defendants, or either of them, negligently and unreasonably obstructed the crossing in question in this case, and that such obstruction was an efficient proxi- (932]) *mate cause, of the injury and death of intestate, then such defendants, or either of them, would be liable, unless negligence, wilfulness, wantonness or recklessness on the part of plaintiff's intestate combined and contributed with the negligence of such defendants, or either of them, as a proximate cause of the injury and death.

933] *It is the duty of a railroad which constructs and maintains its line of railway over a public highway, to protect the crossing of such highway, and to keep it free from obstructions, except such as may be reasonably necessary to the efficient use and operation of its railroad lines.

This duty of a railroad to keep its crossings clear and unobstructed as above defined is a nonassignable duty, and the railroad has no (934]) right to authorize another party *or corporation to use its track in such a way as to endanger or obstruct the crossing, except where and in so far as it is reasonably necessary to the successful operation of the railroad.

The use of a railroad side track for shifting cars or loading and unloading freight is a lawful use, and cannot be considered negligence or wilfulness even if a highway is temporarily obstructed thereby, unless such obstruction is unnecessary or for an unreasonable length of time considered with reference to the existing cir (935]) cum*-stances.

The statutory law of this State provides that a train of railroad cars must be removed from a crossing within five minutes after notice is given to remove the same, but there is no provision in the statutes as to the length of time a train may lawfully remain over a crossing before any notice is given to remove it; and I charge you that it is not an act of negligence or wilfulness for a train to obstruct a crossing for a reason (936]) ably necessary length *of time. What would be an unreasonable or unnecessary time would be a question of fact for the jury to determine under the evidence in the case.

If you find from the evidence that the Camp Manufacturing Company was using the side track for the purpose of receiving freight from (937]) the railroad and the cross*-ing was not blocked longer than was reasonably necessary for that purpose, then I charge you that such obstruction of the crossing would not be negligence or wilfulness, and your verdict, under such circumstances, should be in favor of the defendants, Camp Manufacturing Company and its engineer, Arthur Pulley.

Even if you find from the evidence that these defendants obstructed the crossing longer than was reasonably neces-

sary under the circum (938]) stances, the plaintiff would *not be entitled to recover against them, unless you find from the preponderance of the evidence that such negligence or wilfulness was a proximate cause of the collision resulting in the death of plaintiff's intestate.

A proximate cause is one which in natural sequence undisturbed by any independent cause produces the result complained of, or was one of the producing causes, and if you find from the evidence that even if these defendants were negligent or wilful, yet the death of plaintiff's intestate was due to an independent cause, then (939]) *I charge you that your verdict must be in favor of Camp Manufacturing Company and its engineer, Arthur Pulley.

Even if you find from the evidence that the defendants, Camp Manufacturing Company and its engineer, Arthur Pulley, were negligent or wilful in obstructing the crossing, but that these defendants could not reasonably have anticipated that some injury to travelers on the highway would result from such obstruction, then I charge you that, under such circumstances, such (940]) obstruction *would not be a proximate cause of the collision, although you find the same to be a remote cause, and your verdict must, under such circumstances, be in favor of these defendants.

In order that an injury be the proximate result of an act, it is not necessary that the actor (941]) should have fore*-seen the particular consequences or injury which resulted. It is enough if he should have foreseen that his act, if negligent, would probably result in injury of some kind to some one to whom he owes a duty.

If you find from the evidence that the driver of the automobile in which plaintiff's intestate was being conveyed could by ordinary care in the reasonable use of his senses in the performance of his duty under the circumstances surrounding him have discovered the proxi (942]) *mity of the approaching train in time to avoid the accident, and was negligent or wilful or wanton in driving on the crossing,

then your verdict must be for the defendants.   In the event that you find that the death of plaintiff's intestate was due to the neglect of the Atlantic Coast Line Railroad Company, or its engineer, Johnston, to give the statutory signals at the crossing where the collision occurred, in which event the intestate, or the person having charge of his person, must have been either grossly negligent, or wilfully or wantonly negli (943]) *gent in order to bar a recovery, under the statute which I will more fully explain to you.

In considering whether or not a failure to look or listen was negligent, the jury may take into consideration any evidence, if any there should be, showing the presence of some imminent danger or emergency not brought about by the travelers' own negligence; or the presence or influence of unusual or extraordinary conditions not created or controlled by the traveler him (944]) self, and espe*cially if such conditions are brought about by the railroad company, along with any and all other evidence in the case.

Plaintiff also alleges that the train of the Atlantic Coast Line Railroad Company, operated by the defendant, Johnston, as engineer, struck (945]) injured and killed *said D. B. Miller at said crossing over said public road or highway, in consequence of the negligent or wilful or wanton acts of said Atlantic Coast Line Railroad Company, and of its said engineer and fireman in running said train at a high, excessive and dangerous rate of speed, and without keeping any proper or adequate lookout, safeguards and warnings. These allegations of the complaint are denied by defendants, and the plaintiff must prove one or more of them by the greater weight (946]) *of the evidence before he can recover on account of any of them.   It is the duty of a railroad company and its servants and agents operating its railroad trains to use ordinary care to avoid injury to travelers on a public road crossing over the railroad tracks. You must determine from any evidence there may be in the case at what rate of speed the train in question was being

run, and whether or not such rate was high and excessive or dangerous to persons using the crossing in question, and whether or not, in view of such surroundings and condi- (947]) *tions, as the evidence may show then existed at the crossing running the train at such speed as you may find it was run, was an act either of negligence or of wilfulness or of wantonness toward travelers using the crossing on the highway. So you must apply the test, what did ordinary care require under the existing circumstances, and determine from the evidence, if any there be, what lookout for travelers, if any, should have been kept at this crossing, and whether or not such lookout was kept (948]) and *what warnings or signals, if any, should have been given of the approaching train, or whether, if any should have been given, they were given or not. Was the running of the train at the speed at which it was then being run an act of negligence, or of willfulness, or of wantonness? Were the defendants, A. C. L. R. R. Co. (949]) or its engineer *or its fireman operating its train either negligent, or wanton, or wilful in failing to keep a proper lookout, or in failing to give any signal, or warning to travelers on the highway? Was any such act of negligence, or wilfulness, or wantonness on the part of the defendants, A. C. L. R. R. Co., its engineer or fireman, if proven, a proximate cause of the death of plaintiff's intestate?

Where there is a public road or street crossing or inter- secting with a railroad in a town or (950]) populous com- munity *which people are likely to frequent and to travel on and across, it is the duty of a railroad, at common law, and outside of the requirements contained in the positive statutes of our State, to keep such lookout and give such signals as a person of ordinary care and prudence would regard and deem reasonably proper and sufficient in view of the situation and surroundings, to put on their guard in- dividuals who use the highway and crossing. And the

failure to use such care for the protection of travelers on the highway would be negligence.

951]   *In determining what is a reasonably sufficient look-out, warning and signal to be given, it is the duty of the jury to take into consideration all the facts and circumstances, which they find from the evidence surrounded the particular crossing at the time in question, and determine whether or not, under these facts and circumstances, there was a failure on the part of any defendant to give such signal or warning to travelers, if any, who should have been expected on, or were on, the highway, as ordinary care for their protection required.

952]   *As to speed: The ordinance of the town council of St. Stephens in evidence makes it unlawful to run any engine or train of cars anywhere within the corporate limits of said town at a greater speed than twenty miles an hour. If the defendant, A. C. L. R. R. Co., or Johnston, (953]) *ran an engine and train of cars through the Town of St. Stephens at a greater speed than twenty miles an hour, they would be guilty of negligence in so doing, and if such negligent act was the proximate cause of the death of D. B. Miller, then either defendant guilty of such negligence would be liable for any damage arising to the plaintiff from the death of said D. B. Miller, unless said D. B. Miller contributed to his own injury or death by some act of negli-(954]) gence or gross negligence or willfulness *or wanton-ness or recklessness on his own part, as alleged in the answers of the defendants in this case. If the train did not exceed the speed of twenty miles an hour while running in and through the Town of St. Stephens, you would still have to consider whether or not the rate of speed at which it was run was greater than ordinary care toward travelers on the highway crossing allowed. An engineer, fireman or other person, on or in charge of a locomotive engine running on a railroad track, seeing a traveler (955]) on a public road approaching a *crossing over the railroad track, in apparent

possession of his faculties, would have a right to assume, in the absence of circumstances to indicate the contrary, that such person is using his faculties, and will not drive upon the railroad track in view of an approaching train.

The Court further charges the jury that the ordinances of the Town of St. Stephens duly enacted for the purpose of regulating the speed of trains within its corporate limits are valid and binding laws within the corporate limits of such town.

956]    *And the violation of a town ordinance is negligence *per se,* or negligence as a matter of law.

If the jury find from the evidence by the greater weight thereof that the defendant, Atlantic Coast Line Railroad ·was operating its train at a (957]) greater rate of *speed than twenty miles per hour in the town of St. Stephens, at the time of the accident, this wouldn't be negligence *per se,* or negligence as a matter of law. ·

Plaintiff also alleges that defendant, A. C. L. R. R. Co., and its said engineer and fireman were negligent, wilful and wanton in failing to give the statutory signals in approaching the crossing in question. *These allegations are denied by defendants.*

Our statute (Civil Code, Sec. 4903) requires (958]) that a *bell· of at least 30 lbs. weight and a steam or air whistle shall be placed on each locomotive engine, and such bell shall be rung or such whistle sounded by the engineer or fireman at the distance of at least five hundred yards from the place where the railroad crosses any public highway or street or traveled place and be kept ringing or whistling until such engine has crossed such highway or street or traveled place. It also provides (Civil Code, Sec. 4925) : If a person is injured in his person or property by collision with the engines of a railroad com· (960]) *pany at a crossing, and it appears from the evidence, that the railroad company neglected to give the signals prescribed in Section 4903, the requirements of which I have just stated, and that such neglect con-

tributed to such injury, the railroad company guilty of such neglect to give such statutory signals at such crossing, shall be liable for all actual damages caused by the collision, unless it be shown by the evidence, that in addition to a mere want of ordi (961]) nary care the person injured, or the *person having charge of his person, was at the time of the collision guilty of gross or wilful negligence or was acting in violation of law, and that such gross or wilful negligence contributed to the injury.

*It is admitted in this case,* that the crossing of the railroad track on which the collision oc (962]) curred was one *over public highway, and such a crossing as the statute requires the signals to be given at. That is a crossing by the railroad tracks over a public highway or traveled place. That being an admitted fact, you should inquire and determine from any evidence in the case, whether or not the signal or signals required at such crossing by the statute which I have read were or were not given.·

Both the sections of the Civil Code which I have stated to you are positive enactments of our Legislature, intended to safeguard and protect the public and the railroads at crossing of public highways; and it being admitted in this case that the death· of intestate occurred at a public crossing of a highway and the railroad, the Court charges you that these positive enactments of the statute are to be considered in passing on this case, along with any and all evidence in the case.

If you find from the evidence that the statutory signals were not given for the crossing at which the collision occurred, you must next de (963]) termine from the evidence, *whether or not such omission, neglect or failure to give such signals was a proximate cause of the collision, and of the death of D. B. Miller.

*If the plaintiff has shown by the greater weight of the* evidence that a *failure or neglect of the* A. C. L. R. Co.,

or of its engineer or fireman *to give the signals required* by the statute law of this State at the crossing of the railroad tracks over the public road mentioned in the complaint was a proximate cause of the (964]) death of D. B. *Miller, *then the plaintiff would be entitled to receive* all damages caused to him by such death of his son; *unless* the defendant has shown by the greater weight of the evidence—or it appears from the greater weight of the evidence—that in addition to a mere want of ordinary care D. B. Miller, or any person (965]) having charge of his *person, was at the time of the collision, guilty of gross or wilful negligence; and that such gross or wilful negligence contributed to the injury and death of Mr. Miller.

The Court further charges you that failure to give the signals in the manner provided and required by these statutes is negligence *per se,* or negligence as a matter of law, and that such circumstances if shown, may be considered with any and all other evidence in the case in considering the question of wilfulness.

966]    *The statute requires that the whistle should be kept sounding, or the bell kept ringing until the engine has crossed such highway.

Where the signals are not given as and in the manner provided by statute, and an injury occurs at the crossing of a railroad and public highway, a presumption would arise that the failure to give the signal is the proximate cause of the injury.    But such presumption would be rebuttable by evidence, and the jury should consider any and all evidence that may be in the (967]) case, in determin*ing the question of proximate cause.

If the jury find from the evidence by the greater weight thereof that the defendant, Atlantic Coast Line Railroad Company, failed to give the signals as required and provided by the statute, then the defense of ordinary contributory negligence would not be available to such defendant.    Only wilful or gross negligence on the part of Mr. Miller, or any

person having charge of his person, would bar a recovery, if the statutory (968]) signals were not *given at the crossing where the collision occurred, and the failure or neglect to give the statutory signals contributed as a proximate cause to Mr. Miller's death.

The only defense that is available to a railroad which fails to give the statutory signals, where injury occurs by reason thereof as a (969]) proximate cause, is that the party *injured was guilty of gross or wilful negligence, or was acting in violation of the law, and that such gross wilful negligence, or unlawful act contributed to the injury.

Gross negligence is a failure to use even slight care under the existing circumstances surrounding the actor. Wilful negligence is where one concious that ordinary care or prudence requires him to use certain precautions for his safety, intentionally fails to use them, or conscious that a course of conduct or act is negligent in (970]) ten*tionally follows such course or does such act.

Where a party is put in imminent peril by a sudden and unexpected emergency not brought about by his own negligence, the law requires of him only the care which a man of ordinary prudence would have exercised in the same circumstances, and makes proper allowance for excitement, terror or the instinct of self-preservation.

In passing upon the question of whether the plaintiff's intestate was guilty of negligence, or was guilty of gross or wilful negligence, or was (971]) acting in violation of the *law, the jury are entitled and authorized to take into consideration all the facts and circumstances which surround the intestate, and Mr. Pinckney, who was driving the car at the time of the alleged accident and injury.

The negligence of the driver of an automobile will not be imputed to a person merely riding in a vehicle by invitation of the owner and riding gratuitously, unless such passenger assumed control or direction of the conduct of the driver. 972]   *The A. C. L. R. R. Co. and its engineer, as an

affirmative defense, allege:    (Here read 2d defense in A. C. L. R. R. answer.)

The Camp Manufacturing Company and the defendant, Pulley, set up and allege as an affirmative defense:    (Here read Paragraphs 7, 8 (973]) and 9 of answer of Camp Manu*facturing Company..)

If the plaintiff should prove by the greater weight of the evidence that D. B. Miller was killed as a proximate consequence of some act of negligence or wilfulness or wantonness on the part of one or more of the defendants sued; then the burden of proof would shift to such defendant or defendants to prove the one or more affirmative defenses set up in its, his or their answer by the greater weight of the evi (974]) dence.    As to the effect of these *defenses, if proven, I charge you:

If Devant B. Miller, or Mr. Pinckney, if Mr. Pinckney was the driver of the automobile in which Mr. Miller was riding, and was the agent of, or was under the direction or control of Mr. Miller, in driving the automobile, or they were acting in pursuance to a common purpose in driving the automobile, either of them wilfully or wantonly drove on the railroad track in view of an approaching train, and such *wilful* or *wanton* conduct on the part of D. B. Miller, or of (975]) Mr. Pinckney, if Mr. Pinck*ney was the driver of the car in which Mr. Miller was riding and was the agent of, or under the direction, or control of Mr. Miller or they were acting pursuant to a common purpose, proximately contributed to the death of Mr. Miller, then the plaintiff could not recover any damages in this action and under such circumstances your verdict should be for the defendants.

If Mr. Pinckney was the driver of the automobile in which Mr. Miller was riding and was the (976]) agent of, or *under the control or direction of Mr. Miller in driving the automobile, or had charge of the person of Mr. Miller while he was in the automobile, or they were acting in pursuance of a common purpose, and either he or Mr. D. B.

Miller was guilty of gross or wilful negligence, and such gross or wilful neg (977]) ligence under the circum*-stances stated, contributed to Mr. Miller's death, then such grossly negligent or wilfully negligent conduct on the part of Mr. Miller or Mr. Pinckney would prevent plaintiff from recovering in this action on account of an omission, failure or neglect to give the statutory signals at the crossing—if such omission or failure was merely, or only negligent and *not wilful or wanton* on the part of the A. C. L. R. R. Co., and its engineer or fireman operating its train.   A *negligent* act on (978]) the part *of D. B. Miller, or his agent, or on the part of the driver of the automobile in which Miller was riding—if the driver of the car was the agent of, or under the direction or control of D. B. Miller, or was acting with him in pursuance of a common purpose, if any there was, which contributed as a proximate cause to his death— would bar any recovery in this action on account of a negligent act or omission on the part of any defendant in this action, except a *neglect* or *failure* by the A. C. L. R. R. Co., or its engineer or fireman, operating its engine (979]) *and train, to give the statutory signals at a railroad crossing over a public highway.   But such negligence would not bar a recovery for the death of D. B. Miller—if his death was caused by a wilful or wanton act or omission alleged in the complaint.   A *wilful or wanton act* on the part of D. B. Miller or his agent, or on the part of the driver of the automobile—if such driver and Mr. Miller were acting pursuant to a common purpose, or he was the agent of, or (980]) acting under the direction or *control of Mr. Miller in driving the automobile, would, if it proximately contributed to the *death of Mr. Miller,* bar a recovery in this action.

The law imposes upon any person about to cross a railroad track the duty properly to exercise his senses of sight and hearing in order (981]) to find out whether a train *is approaching, since the track itself constitutes a warning of danger, and such person in the exercise of the care required

by law must use caution commensurate with the difficulties which surrounding circumstances, such as darkness, dampness or rain, may create to prevent the due use of sight and hearing.

A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger and the degree of (982]) vigilance required *of both is in proportion to the known risk; the greater the danger, the greater the care required of both.

It is ordinarily for the jury to determine from the evidence applying the standard of due care whether or not an· attempt of a traveler on a highway to cross without looking or listening—if such attempt was made—amount to negligence—or gross negligence—or to reckless, or wilful or wanton—misconduct.

I charge you that the mere fact that there are obstacles in the way of the easy and ready exer (983]) cise of one's *sight and hearing when about to cross a railroad track does not constitute an invitation to such a person to fail to exercise those senses, but rather imposes upon him the duty to exercise such vigilance and care as a man of ordinary prudence should use to find out that it is safe for him to proceed across the track.

The object of the statute requiring signals to be given by a train approaching a crossing is to warn those about to use the crossing of the ap (984]) proach of the train, but if *one sees or hears a train approaching without the signals having been given, and attempts to pass over immediately in front of such train, or by the exercise of the care required by law could have seen the train approaching, then it cannot be said that the failure to give the required signals was the proximate cause of any injury that may (985]) *have been sustained by collision with the train at such crossing.

If you should find from the testimony in this case that the driver of the automobile *saw,* or, by the exercise of ordinary care, *could have seen,* defendant's train fast ap-

proaching and wilfully attempted to cross immediately in front of the same, when so to attempt to cross would be obviously dangerous to a person of ordinary prudence and care, or failed to use even slight (986]) care for the pro*-tection of himself or of one with him in the automobile, I charge you as a matter of law that, even though defendant failed to give the signals required by statute, such acts or omission on the part of the driver would constitute gross contributory negligence, and if such gross contributory negligence on the part of the driver, combining and concurring with the negligence of the defendant, contributed to the injury and death of plaintiff's intestate as a direct and proximate cause thereof, and without which it would not have been sustained, and (987]) *you should further find from the evidence that the driver of the automobile and D. B. Miller were acting pursuant to a common purpose in driving the automobile, or that said driver was the agent of, or acting under the control or direction, of D. B. Miller, your verdict should be for the defendants; and if the driver was guilty of such gross or wilful contributory negligence, and at the time had charge of the person of Mr. Miller, then such gross or wilful contributory negligence on the part of said (988]) driver *would bar, or prevent, a recovery by the plaintiff in this action.

If you find from the testimony that defendant's track, at the crossing upon which it is alleged plaintiff's intestate was killed, was perfectly straight, and that a train approaching from either direction could be easily seen and (989]) *heard by the exercise of the *slightest* degree of care, such as a turning of the head and looking properly, or merely pausing and listening, and it would be obviously dangerous, reckless, and wanton to a person of ordinary prudence and care for a person to attempt to cross the railroad track without exercising such precautions; a failure on the part of one so attempting to cross to use such slightest degree of care would constitute gross negligence; and if the traveler realized or

11—S. C. 140

was conscious of (990]) *the danger and necessity of care, and being so conscious acted without the slightest care, his act in so doing would be reckless and wanton, and I charge you, if you find from the testimony, the driver of the automobile attempted to cross defendant's track without the exercise of the slightest care, and plaintiff's intestate was killed thereby, said driver would be guilty of gross contributory negligence, and if he was conscious of the necessity for care,. when he so acted without it he would be guilty of recklessness and wantonness, and if such gross (991]) *contributory negligence, recklessness and wantonness on the part of the driver, combining and concurring with the negligence, recklessness, wilfulness and wantonness of defendants, if any there was, produced the death of plaintiff's intestate as a direct and proximate cause thereof and without which it would not have been sustained, and said driver had charged of Miller's person, considering the case as under the statute with reference to signals at crossings on public highways, or was act (992]) *ing in pursuance of a common understanding with, or as agent of, or under the direction or control of Miller, then under such circumstances your verdict should be for the defendants.

In this action the plaintiff claims damages, actual and punitive, against the defendants herein (993]) for the injuries *to and death of his son, claiming such injuries and death were due to and caused by some one or more of the alleged negligent, wilful or wanton acts on the part of the defendants, or some of them, which are set out and specified in the complaint.

The Court charges the jury that it is incumbent on the plaintiff to satisfy the jury by the greater weight of the evidence that the injury and death of the plaintiff's son was caused by some one or (994]) more of the negligent *acts charged in the complaint before plaintiff can recover on account thereof.

It is not necessary that the plaintiff should prove *all* of the negligent acts charged; nor is it necessary that the plaintiff should prove negligent or wilful acts on the part of *all* of the defendants. If the plaintiff shall satisfy the jury under the rules and limitations and with the qualifications, which I have stated in this charge, that the defendants, or either of them, were (995]) guilty of *one or more negligent or wilful acts, which was the proximate cause of the death of the intestate, and that the plaintiff is not barred or prevented of recovery under the affirmative defenses of the defendants which I have read to you, then the plaintiff would be entitled to recover a verdict at your hands against such defendant or defendants, although you might find that some of the alleged negligent or wilful acts were not proven, or that some of the defendants were not liable.

If you should find from the evidence that un (996] der the *law as I have stated it, plaintiff is entitled to recover against the defendant, Johnston—the engineer in charge of A. C. L. R. R. train No. 82, on account of his neglect to give the statutory signals at the crossing where the collision occurred, and that Johnston .was employed by the defendant, A. C. L. R. R. Co., as (997]) its engineer, agent or *servant to operate said train, then said company *would be equally liable with Johnston for any damage* arising to plaintiff from the death of his son; if Johnston was liable therefor under the law as I have stated it to you, and under such circumstances; your verdict should be against *both Johnston and the A. C. L. R. R. Co.,* for the amount of such damages, if any are proven. But if the jury should find from the greater weight of the evidence that the death of D. B. Miller was (998]) proximately *caused by a negligent and unnecessary blocking of the highway crossing, where the collision occurred, and that the A. C. L. R. R. Co. is, under the law I have stated, liable to plaintiff on that ground, then while such a state of facts would authorize a verdict against the A. C. L. R. R. Co., they would not authorize a verdict

against Johnston.   Johnston would *only* be liable to plaintiff in case *he* were guilty of some negligent, or wilful, or wanton act, alleged in the ·complaint.   So, if you find the defendant, Pulley, was the servant of the (999]) Camp Mfg. *Company and acting within the scope of his employment and the furtherance of that company's business, negligently, or wantonly ,or wilfully blocked or obstructed the crossing, and as a proximate result caused the death of Miller—then they would *both* be liable for any damages thereby caused to Miller's father, unless an affirmative defense thereto has been proven.   The case should be considered in order to determine whether or not *each defendant* is, or is not, liable, applying the rule that (1000]) a· *master, or employer, is to· be held *liable only* for the negligent or wilful or wanton acts of its servant or agent done in the scope of his employment or agency and in furtherance of the master's business.

If the death of D. B. Miller was caused by some act of negligence, wilfulness or wantonness (1001]) on the part of *any defendant in this action alleged in the complaint, and if no affirmative defense pleaded in the answer of such defendant has been proven, the jury may give such damages against such defendant, including punitive damages, where such wrongful act was the result of wilfulness or wantonness as the jury may find from any evidence in the case is proportioned to the injury resulting from the death of D. B. Miller to his father, the plaintiff in this action.

1002]. *If·the jury find that the plaintiff is entitled to recover against the defendants, or either or any of them, then the jury will ascertain as nearly as possible the reasonable value of the life of the intestate, and in doing so may consider any evidence as to the age of intestate, his probable expectation of life, his health, his habits of industry, economy and thrift, if there be such in the case, and give such sum as would be a reasonable measure of the actual value of his life to the loss to his father, such damages,

if proven, are called "actual damages."   If a de- (1003])
fendant *is liable on account of act or omission alleged
in the complaint which was negligent he would be lia-
ble only for actual damages.   But if such defendant was
guilty of a wilful or wanton act alleged in the complaint,
and the plaintiff is entitled under the law as I have stated it,
to a verdict against such defendant on account of such wil-
ful or wanton act, then the plaintiff would be entitled to re-
cover punitive damages in addition to actual damages.

1004]   *If the jury find from the evidence by the greater
weight thereof that the plaintiff is not only entitled to actual
damages, but also to punitive damages under the law as laid
down by this Court, then the jury may give in addition to
the sum they find for actual damages under (1005]) the
*rules herein specified, such further sum by way of punitive
or exemplary damages, as the jury may deem proper, to
serve to deter the defendants and others from like wilful
and wanton acts.

So, if the jury find actual and punitive damages, they
will separate their verdict, stating separately how much they
find as actual damages, and how much, if any, as punitive
damages, writing out the amount in either or each case, in
words and not in figures.

The form of your verdict may be either in (1006]) favor
of, *or against, all the defendants, or any one or more of
them, according as you may view the testimony—applying
thereto the law as I have stated it.

If you find in favor of the plaintiff, you should in your
verdict state the amount of damages, and also state the kind
of damages, whether actual or punitive, and if you find both
actual and punitive damages, state the amount of each
separately.

And if you find a verdict in favor of one or more de-
fendants or against one or more defend (1007]) ants,
specify by *name, the particular defendant, or defendants,

against whom you may find, if you find against some and not all.

Now, whatever verdict you find write it on the back of this blue paper, the complaint. I give you both the complaint and answer, so that you may have them with you in the room if you want to read them over. Write the verdict on the back of the blue paper. You can retire.

A blueprint introduced in evidence here reduced in scale, also follows:

*Messrs. Douglas McKay* and *Thos. W. Davis,* for appellant, Atlantic Coast Line Railroad Company, cite: *Where master charged with responsibility for neglect of servant, and both master and servant are sued, a verdict exonerating servant and holding master cannot stand:* 104 S. C., 266; 106 S. C., 20; 111 S. C., 405; 125 S. E., 651; Id., 912; 89 S. C., 408; 109 S. C., 145. *Same, applies to*

*joint tortfeasors:*   175 N. W., 281; 50 Atl., 3; 56 N. E.,
287; 34 N. E., 459; 161 U. S., 316; 40 Law., 712; 77 S. C.,
155; 34 C. J., 982; 3 L. R. A. (N. S.), 84; 102 S. E., 169.
*In absence of a general allegation of negligence on the part
of the master, plaintiff must rely upon the specifications
made:* 125 S. E., 651. *Gross contributory negligence:* 117 S.
E., 55; 78 S. C., 374; 126 S. E., 449; 125 S. E., 34; Id., 31;
94 S. C., 143; 114 S. E., 50; 112 S. E., 352. *Admission
of testimony:*   75 S. E., 1018; 59 S. C., 311, 315; 54 S. E.,
255; 1 McM., 56. *Where evidence erroneously admitted
and prejudicial and verdict is in consonance therewith,
prejudicial error will be presumed:* 108 S. E., 363.
*Law of proximate cause:* 114 S. E., 761. *Same, ap-
plied to signal statute:*   47 S. C. 105; Id. 375; 58 S. C.,
322; 94 S. C., 143; 104 S. E., 542; 65 S. C., 229; 73 S. C.,
254; 83 S. C., 325; 78 S. C., 374; 114 S. E., 500; 90 S. C.,
281; 122 S. E., 864. *Where a railroad company obstructs
a public crossing for an unreasonable length of time, it be-
comes a trespasser:*   77 S. C., 161; 49 S. C., 12. *Doctrine
of sudden emergency does not apply:* 108 S. C., 25;
60 S. E., 56. *Basis of recovery by father for loss of son:*
11 S. W., 694; 14 A. S. R., 65; 76 Pac., 832. *Proper for
Court to set aside a judgment on the ground that it is un-
conscionable:*   96 S. C., 267; 124 S. C., 458; 127 S. E.,
264; 118 S. E., 817; 76 S. C., 183; 81 S. C., 213.

*Messrs. Octavus Cohen* and *L. D. Lide,* for appellant,
Camp Manufacturing Company, cite: *In an action against
master and servant jointly, where verdict rendered in favor
of servant and against master, it will be set aside:* 104
S. C., 266; 106 S. C., 20; 111 S. C., 405; y25 S. E., 65y; Id.,
912. *Law of proximate cause:* 123 S. E., 839; 109 S. C.,
119; 84 S. C., 536; 114 S. E., 761; 213 U. S., 7; 103 S. E.,
543; 1 Strob., 525. *Obstruction to crossing statute does
not apply at bar:* Sec. 2922, Code; 47 L. R. A. (N. S.),
820. *Gross contributory negligence:* 114 S. E., 500; 289
Fed., 945; 2 Fed. (2nd), 672; 117 S. E., 55. *Error not to*

*set aside unconscionable excessive verdict:* 8 Eng. R. Cas., 439; 4 Hurl. & N., 511; 8 R. C. L., 840; 30 A. L. R., 114; 96 S. C., 267; 124 S. C., 458. *Error in arriving at measure of damages:* 81 S. C., 203; 86 S. C., 379. *Warrants of attorney not necessary:* 3 Rich., 364; 56 S. C., 1; 1 Bail., 448; 6 C. J., 635.

*Messrs. D. W. Robinson and D. W. Robinson, Jr.,* for respondent, cite: *Liability of master and servant when joint tortfeasors:* 104 S. C., 64; 113 S. C., 527. *Degree of care traveler due to exercise:* 111 S. C., 153. *When verdict must be against servant as well as master:* 125 S. E., 651; 106 S. C., 22; 104 S. C., 267; 129 S. C., 256; 114 S. C., 31; 113 S. C., 527; 111 S. C., 414; 117 S. C., 7. *Common law duty of railroad at crossing:* 106 S. C., 131; 121 S. C., 401; 110 S. C., 567; 25 S. C., 61; 61 S. C., 409; 16 Hun. (N. Y.), 415; 88 N. Y., 13; 86 S. W., 282; 107 Ill., 199; 6 Heiskell (Tenn.), 174; 31 S. W., 84; 98 S. W., 308; 105 S. W., 167; 106 S. E., 758; Sec. 4898. *Code applies to all railroads:* 55 S. C., 101; 110 S. C., 318. *Both lessor and lessee are responsible for damages arising out of operation of the railroad:* 108 S. C., 135; 127 S. C., 541. *Law of proximate cause:* 126 S. C., 420; 93 S. C., 293; 126 S. C., 450. *Not necessary to foresee particular injury:* 121 S. C., 358; Id., 328; 112 S. C., 272; 22 R. C. L., 125; 115 S. C., 180; 63 Fed., 532; L. R. A., 1915-E, 995; 153 S. W., 429; 44 L. R. A. (N. S.), 1069; 60 So., 729; 49 L. R. A. (N. S.), 446; 144 N. W., 13; 27 A. L. R., 931; 248 S. W., 667. *Independent intervening causes:* 22 R. C. L., 11; 126 S. C., 420. *Obstruction of highway and railroad crossing:* 67 S. C., 509; Sec. 4983, Code; 10 Rich., 232; 127 S. C., 542; 107 S. C., 130; 69 S. C., 355; 77 S. C., 163; 61 S. C., 409; 49 S. C., 18; 114 S. C., 264; 81 S. C., 336; 20 L. R. A. (N. S.), 426. *Joint tortfeasors:* 67 S. C., 514; 111 S. C., 152; 113 S. C., 153. *Sufficient evidence to go to jury:* Sec. 4903, 4925, Code; 117 S. C., 519; 87 S. C., 328; 115 S. C., 118; 114 S. C., 264; 120 S. C., 373; 101

S. C., 412; 97 S. C., 67; 111 S. C., 150.  *When verdict may be directed:* 124 S. C., 326; 117 S. C., 19; 113 S. C., 268; 86 S. C., 379; 126 S. C., 450; 107 S. C., 523.  *Gross negligence and contributory negligence question for jury:* 67 S. C., 514; 121 S. C., 404; 122 S. C., 363; 117 S. C., 519; 120 S. C., 373; 114 S. C., 262; 106 S. C., 129; 115 S. C., 119; 76 S. C., 378; 106 S. C., 339; 118 S. C., 308; 2 Fed. (2nd), 674; 126 S. C., 450; 106 S. C., 129; 111 S. C., 329.  *Violation of statute evidence of wilfulness and wantonness, for jury to say:* 108 S. C., 393; 83 S. C., 357; 84 S. C., 536; 69 S. C., 356; 104 S. C., 324.  *Wilfulness and contributory negligence:* 91 S. C., 542; Id., 548; 99 S. C., 296; 94 S. C., 471; 127 S. C., 507.  *Negligence of driver not imputed to guest:* 2 R. C. L., 1207, Sec. 43; 20 R. C. L., 158, Sec. 132; 1 Supp., 743; 4 Supp., 159; 95 S. C., 192-5; 117 S. C., 13; 113 S. C., 53; 123 S. C., 455; 27 A. L. R., 933; 248 S. W., 667; 116 U. S., 375-380; 29 L. Ed., 655; *Rose's notes to this case,* 217-222; 3 Elliott on R. R., Sec. 1174; *Sudden peril:* 18 R. C. L., 654, Sec. 147; 120 S. C., 335-338; 89 S. E., 1017; 81 S. C., 337; 79 S. E., 935; Richey (2nd) Fed. Empl. Liability, 163, Sec. 67.  *Opinion:* 110 S. C., 390.  *Judgment not reversed because some questionable testimony allowed, when there is a sufficiency of competent testimony to support verdict:* 108 S. C., 474; 82 S. C., 275; 102 S. C., 146.  *Contradicting witnesses:* 114 S. C., 27; 103 S. C., 12.  *Value of life:* 122 S. C., 157; 113 S. C., 54; 76 S. C., 211; 81 S. C., 213; 86 S. C., 395.  *Excessive damages:* 124 S. C., 473; 110 S. C., 38; 96 S. C., 278; 78 S. C., 556; 74 S. C., 314; 103 S. C., 117; 86 S. C., 530; 11 S. C., 591; 92 S. C., 167; 127 S. E., 266.  *Presumption as to proximate cause:* 115 S. C., 119; 91 S. C., 225; 97 S. C., 429; 84 S. C., 137; 47 S. C., 381; 126 S. E., 449; 125 S. E., 34; Id., 31; 128 S. C., 363; 90 S. C., 281.  *Charge must be taken as a whole:* 99 S. C., 468; 86 S. C., 394; 111 S. C., 111; 103 S. C., 354; 115 S. C., 232; 116 S. C., 48; 102 S. E., 170.

September 10, 1926.

Rehearing denied June 30, 1927.

The opinion of the Court was delivered by MR. CHIEF JUSTICE WATTS.

The "Case" contains the following statement:

"The cause above named was begun by the service of summons and complaint in July, 1923, but the summons and complaint were never served on defendant Arthur Pulley, and first came on for trial before his Honor, Judge Milledge L. Bonham, and a jury, May 1, 2, and 3, 1924, term of the Court of Common Pleas for Richland County, and resulted in a mistrial. The case next came for trial before his Honor, Judge Wm. H. Townsend, and a jury, on May 22 and 23, 1924, and resulted in a verdict for the plaintiff for the full amount asked for, $50,000. The verdict found by the jury is as follows: 'We find for the plaintiff against the Atlantic Coast Line Railroad Company the sum of twenty-five thousand dollars, actual damages; we further find for the plaintiff against the Camp Manufacturing Company the sum of twenty-five thousand dollars actual damages. [Signed] E. J. Zobel, Foreman.' Motions for direction of verdict and for new trial were duly made by the appellants and were overruled by the trial Judge."

Both appellants file exceptions. The Atlantic Coast Line has interposed five separate exceptions peculiar to its appeal and ten general exceptions common to itself and Camp Manufacturing Company. The exceptions raise the question that a directed verdict should have been granted as asked for, upon the verdict that exonerated all of the other defendants against whom the wrongful acts are charged; no allegation or evidence of Clintworth's (the station agent's) negligence constituting the proximate cause, verdict should have been directed for the defendants; error in admission of testimony; that the Court erred in charge of proximate cause; gross and excessive damages; error in

charge as to the right of the railroad company to obstruct the highway crossing in the use of the side track; in not directing a verdict on the ground of gross contributory negligence. The exceptions raise the question that, as the jury did not find Pulley, the engineer of Camp Company, liable, or Johnston, the engineer of the Atlantic Coast Line, liable, the verdict necessarily exonerated the masters or companies for which the parties were working, respectively.

The evidence was sufficient to carry the case to the jury that the Camp Company, with the consent, acquiescence, and approval of the Atlantic Coast Line, had placed and kept its train on the track of the Atlantic Coast Line Railway and across the public highway and crossing of said road, and obstructed the crossing of said highway and crossing, and it was for the jury to say whether unnecessarily and for an unreasonable length of time, and whether it was without headlights, safeguards, or warning to the public of such obstruction.

The evidence shows that Clintworth, the agent of the Atlantic Coast Line Railway Company, by his active direction, allowed it. The Atlantic Coast Line Railway owned the track; Clintworth was its agent and had authority and control. The evidence shows that in the Town of St. Stephens, where the accident happened at the main public crossing, over three parallel tracks of the Atlantic Coast Line, the population and business houses of the town of 500 or 600 people are about equally situated on either side of the railroad, and that this was the main crossing for the entire town. There was evidence for the jury to say whether there were lights or not at the crossing, either on the train which obstructed it or on the depot. The situation was such that both companies owed the duty to the public of whatever would be reasonably adequate to protect this crossing, with the increased danger which they had caused.

There was no light provided by town or either rail-
road. There was no flagman there. We see no error
on the part of his Honor in submitting the case to
the jury; the public has a right to be protected where a high-
way crosses a railroad track.

This Court has decided that, where the servant or
employee sued was not the only agency, under the
pleadings and evidence, which could have committed
the wrong, then acquittal of the servant is not a discharge of
the master. *Howell v. Southern R. Co.,* 114 S. C., 31; 102
S. E., 856; *Spigener v. S. A. L. R. Co.,* 111 S. C., 414; 98
S. E., 330; *Beauchamp v. Winnsboro Granite Co.,* 113 S.
C., 527; 101 S. E., 856; *Donald v. A. C. L. R. Co.,* 117 S.
C., 7; 108 S. E., 180. In the *Howell case* this Court says:

"But the acquittal of Williams will not affect the acquittal
of the railroad, unless Williams was the only agency by
which the event could have been compassed, and the testi-
mony shows abundantly that he was not."

In the *Beauchamp case* the Court, speaking through Mr.
Justice Hydrick, said:

"But, while the company is liable for the conduct of the
engine crew, though they may have acted in violation of
their orders and also for the conduct of the defendant Hey-
ward, if he was guilty of wrongdoing resulting in dam-
age to plaintiff, because all of them were its agents or serv-
ants, nevertheless the liability of the defendant Heyward
depends upon his own conduct, and not upon that of the
engine crew, especially if they violated his instructions,
because they were not his servants. Evidently the Court
fell into the error of regarding Heyward as the master, but
he was not. He was only the representative of the master;
and a representative of the master is not personally liable
for the conduct of other agents or servants of the same
master under him, unless he makes himself a participant
therein in some way, either by actual participation, by direct-
ing their conduct, or otherwise. 7 Labatt's Master and Serv-

MILLER, ADMINISTRATOR, *v.* A. C. L. R. Co.  163

ant, § 2590. Therefore the jury should have been instructed, as requested, that, if they believed Mr. Heyward's testimony, they would not find against him; and, of course, it follows that the Court erred in charging the jury that they could not find against the company without finding against Heyward. This conclusion is in harmony with all of our decisions on the point."

It is the duty of a railroad, at common law (and outside of any *statutory* requirements), to give such signals at a public crossing as may be reasonably sufficient, in view of the peculiar situation and surroundings at the time, and as will give the public and individuals warning of the approach and guard them against danger. *Callison v. C. & W. C. R. Co.,* 106 S. C., 131, 132; 90 S. E., 260; *Chisolm v. S. A. L. R. Co.,* 121 S. C., 401; 114 S. E., 500 (7); *McAllister v. C. & O. R. Co.,* 243 U. S., 308; 7 S. Ct., 274; 61 L. Ed., 740; *Chicago, R. I. & P. Ry. Co. v. Sharp,* 63 F., 532; 11 C. C. A., 338, 339; 2 Elliott on Roads and Streets (3d Ed.), §§ 1023, 1024, 1025; *Clifford v. Southern Ry.,* 87 S. C., 328; 69 S. E., 513, and cases cited; *Kaminitsky v. Railroad Co.,* 25 S. C., 61.

Ordinary prudence might require a particular crossing to be flagged at certain times, and not others, on account of the circumstances of extraordinary danger, and this is ordinarily a question for the jury. *Callison v. C. & W. C. R. Co., supra; Matthews v. Railway Co.,* 67 S. C., 513, 514; 46 S. E., 335; 65 L. R. A., 286; 2 Elliott on Roads and Streets (3d Ed.), § 1023; *Langley v. Southern Ry.,* 113 S. C., 56, 57; 101 S. E., 286; *Edwards v. Railroad,* 132 N. C., 100, 101; 43 S. E., 585. In the *Matthews case,* which was an accident at a traveled place along the track of Charleston & Western Carolina and Southern, in Greenwood, the Court, speaking through Mr. Justice Woods, in regard to the liability of both railroad companies, said:

"The charge is, not that the cut which made the danger and into which Partlow fell was improperly constructed and located, but that, owing to the kind of path that led to it over the right of way of the Southern Railway and the Charleston & Western Carolina Railway, these defendants, after the cut was made, owed the duty to Partlow, entering it as one of the public, either to properly notify the public not to use the path, or to guard or warn by obstructions or lights. The wrong, if any, was in inviting Partlow into a place of danger known to them, but not to him, without warning or safeguard; and it was of no consequence that the danger was not created by these companies, but by the rightful action of another railroad in making the cut. If under such circumstances he was injured, without fault on his part, they should be held liable. On the other hand, the lessees of the Georgia, Carolina & Northern Railway cannot avoid liability on the ground that it had no part in allowing the use of the path, and had never in any way consented to such an approach to its cut. It is alleged the Georgia, Carolina & Northern Railway Company knew of the existtence and nature of the path when it made the cut, which was dangerous to pedestrians because of its being across the path at right angles. It will hardly be disputed that one who rightfully makes a ditch or cut, dangerous to travelers, across a well-defined way, with knowledge that it has for a long time been used as a public way, and gives no warning and places no safeguard, will be liable to those who, without fault of their own, are injured thereby. If there was any duty to safeguard the cut, it seems clear that it was a duty which devolved upon each of the defendants. From this conclusion it results that the defendants were properly sued jointly. If two or more persons owe to another the same duty, and by their common neglect of that duty he is injured, doubtless the tort is joint, and upon well-settled principles each, any, or all of the tortfeasors may be held. But when each of two or more persons owe to another a sepa-

1ate duty, which each wrongfully neglects to perform, then, although the duties were diverse and disconnected, and the neglect of each was without concert, if such several neglects concurred and united together in causing injury, the tort is equally joint, and the tortfeasors are subject to a like liability."

And Mr. Justice Marion, in the *Chisolm case,* which is regarded as a leading case on the duties both of the party crossing and of the railroad, says:

"A railroad company and a traveler on a highway crossing are charged with a mutual duty of keeping a lookout for danger, and the degree of vigilance required of both is in proportion to the known risk; the greater the danger, the greater care required of both."

In *Callison v. C. & W. C. Ry., supra,* our Court, speaking through Mr. Justice Hydrick, says:

"And there can be no doubt that ordinary prudence might require a particular crossing to be flagged at certain times, or at one time, on account of circumstances of extraordinary danger, when that degree of care would not be required at all times. Suppose, for instance, a train should approach a crossing constantly used by a great many people, when the atmosphere is so dense with dust or smoke that its approach could not be seen, and those using the crossing could not tell upon which track it is coming; would not ordinary prudence suggest that a flag be sent ahead? The degree of care should be commensurate with the danger. The question here is not whether this crossing should have been flagged at all, but only on the occasion in question. The evidence is that, under ordinary circumstances, those using it had an open and unobstructed view of it and of the tracks approaching it, and therefore, under normal conditions, flagging may not have been necessary for safety. But, on the occasion in question, the train was going upon a double-tracked crossing, which was frequented by people traveling in automobiles. It was going forward during a rainstorm, which

obscured the vision of the trainmen through the glass of the cab windows, as well as that of the. man in the automobile through his windshield, and, possibly, also interfered with each hearing the approach of the other."

In *Eargle v. Sumter Lighting Co.,* 110 S. C., 567; 96 S. E., 909, the Court speaking through the same Justice, says:

"The degree of care to be exercised in every case should be commensurate with the danger; the greater the danger, the greater the care required; that a very high degree of danger calls for a very high degree of care."

In the *Clifford case,* the Court, through Mr. Jutsice Hydrick, said:

"In *Kaminitsky v. Railroad Co.,* 25 S. C., 61, the Court said: 'The common law required the giving of such signals at highways crossings as were reasonable in view of the situation and surroundings "to put individuals using the highway on their guard." Pierce, R. R., 349, and notes.. The signals required by the aforesaid statutes did not supersede these reasonable signals, which were before necessary. They did not take away the common-law right of action, by giving in lieu thereof a new cause of action under the statutes, but simply declared what were proper signals, and expressly made them "cumulative." ' "

In the *Kaminitsky case* the Court considered the case as one at common law, with the right to show in evidence the precautions by way of signals which had been required by the statutes.

In *Burns v. Railway Co.,* 61 S. C., 409; 39 S. E., 567, the Court says:

"The right to bring an action at common law was not superseded by the statutory remedy" (as to crossings).

It was properly submitted to the jury whether the appellant Camp Company was operating its train in violation of Code 1922, Vol. 3, § 4898. *Mew v.*

*Railway Co.,* 55 S. C., 101; 32 S. E., 828; *Crawford v. Mullins Lumber Co.,* 110 S. C., 318; 96 S. E., 494.

8      Both the lessor and lessee, licensor and licensee, are responsible for any damages arising out of the operation of the railroad. *Salley Oil Co. v. Southern Ry. Co.,* 108 S. C., 131; 93 S. E., 336; *Phillips v. S. A. L. R. Co.,* 127 S. C., 541; 122 S. E., 309.

9      As to the exceptions alleging error on the part of his Honor in his charge on proximate cause: This question of proximate cause is one ordinarily for the jury, and is decided by the Court only when the evidence is susceptible of only one rational inference. There was plenty of evidence in this case for submission to the jury. Mr. Justice Marion says, in *State v. DesChamps,* 126 S. C., 420, 429; 120 S. E., 491, 493, as follows:

" 'The proximate cause of an injury is that cause which, in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the result would not have occurred.' 22 R. C. L., 110, § 2. The efficient 'intervening cause must be one, not produced by the wrongful act or omission, but independent of it, and adequate to bring injurious results.' *Mack v. Railroad,* 52 S. C., 336; 29 S. E., 910; 40 L. R. A., 679; 68 Am. St. Rep., 913. *Cooper v. Richland County,* 76 S. C., 20; 56 S. E., 958; 10 L. R. A. (N. S.), 799; 121 Am. St. Rep., 946. Any cause intervening between the first wrongful cause and the final injury, which might reasonably have been foreseen or anticipated by the original wrongdoer, is not such efficient intervening cause as will relieve the original wrong of its character in law as the 'proximate cause' of the final injury. *Harrison v. Berkely,* 1 Strob. 525, 549. *Cooper v. Richland County, supra,* 22 R. C. L., 134, § 19."

As to the exceptions as not necesary to foresee particular injury, we see nothing as to his Honor's charge defining and explaining proximate cause as complained of, taking

the charge as a whole.  In *Sandel v. State,* 115 S. C., 180; 104 S. E., 567, 571 (13 A. L. R., 1268), Mr. Justice Hydrick says:

"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted.  It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one."

To the same effect is *Wilson v. Northern P. R. Co.,* 30 N. D., 456; 153 N. W., 429 L. R. A., 1915-E, 995.  *Hubbard v. Bartholomew,* 163 Iowa, 58; 144 N. W., 13; 49 L. R. A. (N. S.), 446.  *Dallas v. Maxwell* (Tex Com. App.), 248 S. W., 667; 27 A. L. R., 931

We see nothing in the exceptions made that a verdict should have been directed as asked for on the ground that the evidence showed, and no other inference could be drawn therefrom than that the accident resulting in the death of plaintiff's intestate was due to an independent intervening cause.  *Sandel v. State,* 115 S. C., 176; 104 S. E., 567; 13 A. L. R., 1268.  *Howell v. Union Buffalo Mills,* 121 S. C., 137; 113 S. E., 577; *State v. DesChamps,* 126 S. C., 420; 120 S. E., 491.  In the *Howell case* Mr. Justice Marion says:

"For proximate and natural consequences, not controlled by the unforeseen agency of a moral being, capable of discretion, and left free to choose, or by some unconnected cause of greater influence, a wrongdoer must generally answer, however small was the probability of their occurrence."

In *Sandel v. State,* our Court, speaking through Mr. Justice Hydrick, lays down this definition or test:

"The test, therefore, of the sufficiency of intervening causes to defeat recovery, is not to be found in the mere fact of their existence or number, but rather in their nature, and the manner in which they affect the continuity of the

operation of the primary cause, or the connection between it and the injury. If they so affect it that the injury cannot fairly be said to be the natural and probable consequence of the primary cause, *they* become the proximate or efficient, and the primary becomes the remote, cause. The law does not go back to the last efficient cause. *Cannon v. Lockhart Mills,* 101 S. C., 59; 85 S. E., 233. *Carter v. Railroad Co.,* 109 S. C., 119; 95 S. E., 357 [11 A. L. R. 1411]. *Milwaukee, etc., R. Co. v. Kellogg,* 94 U. S., 469; 24 L. Ed., 256; 22 R. C. L., 132, 134."

There was evidence that the Camp Company blocked the main business crossing, without any lights or protection for the public, for an unreasonable length of time, creating a dangerous and deceptive condition, and let this condition remain without protection, probably because of insufficient help, and it so remained for an unreasonable length of time. If that was so, it was for the jury to determine that in the natural, ordinary sequence this condition was at least one of the direct contributing causes to the disaster. The respondent claimed that it was; the appellant contended that it was not; hence the jury had to determine that question.

As to the obstruction of the highway and railroad crossing, the complaint charged both of the defendants with responsibility for obstructing the highway; the evidence shows that the obstruction of the crosing was made by the direct authority of the representative of the Atlantic Coast Line Railway on the spot. A railroad owes a duty to the public of not obstructing a highway, which crosses it, unnecesarily or unreasonably. Code 1922, Vol. 3, § 4983. *Murray v. S. C. R. Co.,* 10 Rich. (44 S. C. L.), 232; 70 Am. Dec., 219. *Gaston v. Rock Hill,* 107 S. C., 130; 92 S. E., 191. *Phillips v. S. A. L. Co.,* 127 S. C., 542; 112 S. E., 309. The jury found that both companies were obstructing the crossing, and that that was the direct cause of the injury; the verdict said both were equally re-

sponsible. *Matthews v. Railway Co.,* 67 S. C., 514; 46 S. E., 335; 65 L. R. A., 286. *Brown v. Southern R. Co.,* 111 S. C., 152; 96 S. E., 701. *Rhame v. Cty of Sumter,* 113 S. C., 153; 101 S. E., 832.

Both the contention that the blocking was unnecessary and was for an unreasonable length of time, as claimed by the plaintiff, was properly submitted to the jury. There was ample evidence to carry the case to the jury of negligence and willfulness; there was some evidence of failure to give statutory signals, and this would have warranted its submission to the jury under the Statute. Code 1922, Vol. 3, §§ 4903, 4925. *Wideman v. Hines,* 117 S. C., 519; 109 S. E., 123. *Bain v. N. W. R. Co.,* 120 S. C., 373; 113 S. E., 277.

The Court could not direct a verdict upon the ground of contributory negligence. It can only direct a verdict when the facts are undisputed, or reasonable men cannot differ as to the inference to be drawn from the testimony.

"The Court can only direct a verdict when the facts are undisputed, or reasonable men cannot differ as to the inferences to be drawn from the testimony." *Richardson v. N. W. R. Co.,* 124 S. C., 326; 117 S. E., 510. *Wideman v. Hines,* 117 S. C., 516; 109 S. E., 123. *Thompson v. A. C. L. R. Co.,* 113 S. C., 268; 102 S. E., 11. *Turbyfill v. Railway Co.,* 86 S. C., 379; 68 S. E., 687. *Crawford v. Charleston-Isle of Palms Traction Co.,* 126 S. C., 450; 120 S. E., 381 (2, 3). *Strickland v. Southern R. Co.,* 107 S. C., 523; 93 S. E., 187.

In the *Richardson case* above, the rule is well stated by the Chief Justice:

"The rule when facts should be submitted to the jury is thus clearly stated in A. & E. Enc. of Law, 465 et seq., and quoted with approval in *Rinake v. Victor Manufacturing Co.,* 55 S. E., 179; 32 S. E., 983. And *Wood v. Manufacturing Co.,* 66 S. C., 482; 45 S. E., 81: 'The general rule

is well known that questions of fact are to be submitted to the jury, and this includes not only cases when the facts are in dispute, but also when the question is as to inference to be drawn from such facts after they have been determined. It will readily be observed that few cases will arise in which there is no question as to the facts involved; the element of ordinary care must from its very character always require the decision of a jury, except where there is a violation of the statutory duty or when the facts are undisputed, and but one inference can be reasonably drawn from them. And the same is equally true as to the determination of the question of proximate cause, so that the following rules may be stated as applicable to every case: The issues of negligence should go to a jury: (1) When the facts, which if true, would constitute evidence of negligence, are controverted. (2) When such facts are not disputed, but there may be a fair difference of opinion as to whether the inference of negligence should be drawn. (3) When the facts are in dispute and the inferences to be drawn therefrom are doubtful.' "

In every case in this State of an injury at a crossing (not necessarily under the crossing statute), where there were obstructions to the view, or where there were obstructions or difficulties in keeping the best lookout, or other things to divert or distract the mind, the Court has held the question of gross negligence and of contributory negligence were questions for the jury. *Matthews v. Railway Co.,* 67 S. C., 514; 46 S. E., 335; 65 L. R. A., 286. *Chisolm v. S. A. L. R. Co.,* 121 S. C., 404, 405; 114 S. E., 500 (13–15). *Curlee v. Sou. Ry. Co.,* 122 S. E., 363; 115 S. E., 628. *Wideman v. Hines,* 117 S. C., 519, 520; 109 S. E., 123 (1–6). *Bain v. N. W. R. Co.,* 120 S. C., 373, 374; 113 S. E., 277 (1 and 2). *Prescott v. Hines,* 114 S. C., 262; 103 S. E., 543. *Callison v. C. & W. C. R. Co.,* 106 S. C., 129; 90 S. E., 260. *Peeples v. S. A. L. Ry.,* 115 S. C., 119; 104 S. E., 541. *Osteen v. Railway,* 76 S. C., 378, 379; 57 S. E., 196. *White v. A. C. L. R. Co.,* 106 S. C., 339; 91 S.

E., 323. *Wheelis v. So. Ry. Co.,* 118 S. C., 308; 110 S. E., 154. *Byrd v. A. C. L. R. Co.,* 2 F. (2d), 674, from ·our C. C. A. opinion by Circuit Judge Woods, citing and approving opinion of Mr. Justice Marion in *Chisolm v. S. A. L. R. Co., supra.*

The violation of the statute as to giving of signals at a public crossing "is negligence *per se;* moreover, it is sufficient to warrant a reasonable inference of recklessness, willfulness, or wantonness, and therefore sufficient to carry that issue to the jury. No doubt, in some instances, it may be the result of mere inadvertence; if so, it will be negligence only." *Callison v. C. & W. C. R. Co., supra. Keel v. S. A. L. R. Co.,* 108 S. C., 393; 95 S. E., 64 (3).

If evidence is susceptible of the inference that the negligence of the defendant was a proximate cause of the injury, then the issue is for the jury. *Crawford v. Charleston-Isle of Palms Traction Co.,* 126 S. C., 450; 120 S. E., 381 (2, 3). If there is evidence which would warrant a reasonable finding that defendant was guilty of recklessness (or of negligence), "we must conclude that the jury so found, if that conclusion be necessary to support a general verdict for plaintiff." *Callison v. C. & W. C. R. Co.,* 106 S. C., 129; 90 S. E., 260.

In *Norris v. Greenville; S. & A. R. Co.,* 111 S. C.. 329, 330; 97 S. E., 848, 850, the Chief Justice states the rule of recklessness or wantonness thus:

"First, second, and third exceptions: These exceptions cannot be sustained, for the reason that not only is the conscious invasion of the rights of another in a wanton, willful, and reckless manner an act of wrong, but also when the wrongdoer does not actually realize that he is invading the right of another, provided the act is committed in such a manner that a person of ordinary reason and prudence would say that it was a reckless disregard of another's rights."

See, also, *Osteen v. Southern R. Co.,* 76 S. E., 378; 57 S. E., 196.

There was evidence both from the plaintiff's and defendants' witnesses that the blocking of this crossing was habitual. Such evidence was sufficient at common law to warrant the submission to the jury of the question of willfulness. *Lorenzo v. Railroad Co.,* 101 S. C., 412; 85 S. E., 964. *Kirkland v. Ry. & Elect. Corp.,* 97 S. C., 67; 81 S. E., 306. *Brown v. Southern Ry. Co.,* 111 S. C., 150; 96 S. E., 701.

"The violation of a statute is negligence *per se,* but not willfulness or recklessness or wantonness *per se.* It is evidence of willfulness, wantonness, and recklessness, but it is for the jury to say." *Keel v. S. A. L. R. Co.,* 108 S. C., 393; 95 S. E., 64. *Dyson v. Sou. Ry.,* 83 S. C., 357; 65 S. E., 344. *Lindler v. Southern Ry. Co.,* 84 S. C., 536; 66 S. E., 995.

It is not necessary to expressly refer to the various statutes which were violated, as this Court has said:

"The Court, however, held that the express reference to the statute was not necessary, saying: 'We see no reason requiring the pleader to expressly refer to the statute. We must make a case bringing the defendant within the liability created by the statute. When this is done, the defendant cannot be misled.' " *Smith v. Gilreath,* 69 S. C., 356; 48 S. E., 262.

An action for wrongs under the statute may be combined with one for wrongs outside of the statute. *Smith v. Gilreath, supra. Edgefield County v. Ga.-Car. P. Co.,* 104 S. C., 324; 88 S. E., 801.

But in this case we have evidence tending to show violation of three different statutes, to wit: (a) Signals at crossings; (b) failure to have brakeman or flagman on rear of train; and (c) blocking of a crossing of a public highway. The negligence of the driver cannot be imputed to the guest. *Langley v. Southern R. Co.,* 113

S. C., 53; 101 S. E., 286. *Clark v. Columbia Ry. G. & E. Co.,* 117 S. C., 13; 108 S. E., 178. *Little v. Hackett,* 116 U. S., 375; 6 S. Ct., 391; 29 L. Ed., 652.

As to the exception as to the evidence of Pinckney offered in reply and to contradict the witness Huggins, we say, as was said in *Smoak v. Martin,* 108 S. C., 474; 94 S. E., 869:

"We shall not reverse a judgment because some questionable testimony was allowed, if questionable it was, when there is a large sufficiency of competent testimony to support the verdict."

As to exception 9, value of life and measure of damages, no request was made to the Court for special instruction by either of the appellants, and we see no error in his Honor's charge. *Trimmier v. Railway Co.,* 81 S. C., 213; 62 S. E., 209. *Turbyfill v. Railway Co.,* 86 S. C., 395; 68 S. E., 687.

As to exception 10, excessive damages, we cannot say that the verdict was sufficiently gross and excessive as to shock the conscience of the Court so that it should be set aside. The judge heard the case, was familiar with it, and let the verdict stand as the jury rendered it, for actual damages, and we will not review the findings of his Honor. *Brickman v. Sou. Ry.,* 74 S. C., 314; 54 S. E., 553. *Steele v. A. C. L. R. Co.,* 103 S. E., 117; 87 S. E., 639. *Huggins v. Railroad Co.,* 96 S. C., 278; 79 S. E., 406, and other authorities too numerous to mention.

As to exception 5, added by leave of Court by Atlantic Coast Line Railroad Company, the cause was submitted to the jury, both as to common-law duty and negligence of the defendant at a public crossing, outside of any question of whether or not the statutory signals were given, and his Honor in his charge gave a reasonable interpretation of the statute under *Peeples v. S. A. L. R. Co.,* 115 S. C., 119; 104 S. E., 541. *Lawson v. Railroad Co.,* 91 S. C., 225; 74 S. E., 473. *Sanders v. Railroad Co.,* 97 S. C., 429; 81 S. E., 786. *Reynolds Tobacco Co. v. A. C. L. R. Co.,* 131

S. C., 208; 126 S. E., 449. *Manning v. A. C. L. R. Co.*, 129 S. C., 391; 125 S. E., 31.

We see no reason to overrule these authorities. We see no reason to sustain any of the exceptions. All exceptions are overruled, and judgment affirmed.

MESSRS. JUSTICES BLEASE and STABLER and MR. ACTING ASSOCIATE JUSTICE RAMAGE concur.

MR. JUSTICE COTHRAN (dissenting) : I dissent from the opinion of Mr. Justice Watts in this case, affirming the judgment below, and think that it should be reversed, for the reasons which follow.

My objections to the validity of the judgment are hereinafter set forth in italics under separate subdivisions. Before entering upon a discussion of these several objections, it appears proper to make the following :

### PRELIMINARY STATEMENT

This is an action for $50,000 damages on account of the alleged wrongful death of the intestate, D. B. Miller, who was killed as the result of a collision between a north-bound train of the Atlantic Coast Line Railroad Company and an automobile in which he was riding, upon a street crossing in the town of St. Stephens, on December 19, 1922. The defendants named in the summons and complaint are Atlantic Coast Line Railroad Company, A. J. Johnston, the engineer of the north-bound passenger train, Montague Fowler, the fireman of that train, Camp Manufacturing Company, a logging corporation which operated a short line railroad physically connected with the Atlantic Coast Line Railroad, and Arthur Pulley, the engineer of the logging train.

The detailed circumstances of the collision will be best understood by reference to the blueprint in evidence, a replica of which upon a reduced scale will be incorporated in the report of the case. It appears that the Atlantic Coast Line Railroad Company (which for convenience will here-

inafter be referred to as the "Coast Line") operated its trains upon double tracks, which ran practically north and south at the point in question; the track upon which north-bound trains were operated being the extreme eastern track. Near and parallel therewith, to the west, was the track upon which south-bound trains were operated, the eastern rail of which was about 8 feet from the western rail of the north-bound track. To the west of the south-bound main line, and about 8 feet from it, was a side track serving the station depot. The space between the rails of each of the two main line tracks was 4 feet 8½ inches; so that the space between the eastern rail of the north-bound main line and the eastern rail of the side track was approximately 25 feet. These three parallel tracks crossed the principal street in the town at right angles.

In the evening of December 19, 1922, the date of the collision, a logging train, composed of several box cars and flat cars, which belonged to the defendant Camp Manufacturing Company (hereinafter referred to as the "Camp Company") and was being operated by the defendant, Arthur Pulley, engineer, backed into the side track from the north, for the purpose of loading certain freight then in the depot into one of the box cars. The logging train had stopped north of the street crossing and entirely clear of it. Pulley, the engineer, inquired of Clintworth, the station agent of the Coast Line, for the freight, and was directed by him to back the train until the box car, into which the freight was to be loaded, was opposite the door of the warehouse, and was told by him that he was permitted under the law to block the crossing with the flat cars at the end of the train for 10 minutes. Pulley proceeded to follow these directions, and while the freight was being loaded, the flat cars blocking the crossing, the collision occurred.

The movements of the intestate, converging to the tragedy, were as follows:

The deceased, Miller, and a young man by the name of Pinckney, each a traveling salesman for a grocery house in Charleston, competing with the other, but on very friendly terms, had engaged a room in St. Stephens at a Mrs. Locklear's, on the west side of the railroad, about 90 feet from the side track. Every Tuesday night they would meet and stay together in this room. On this particular Tuesday, Miller had left Charleston in the morning on his usual trip, and had gotten some three miles out of the city when his automobile stopped. Pinckney overtook him, on a similar mission, traveling in a Ford roadster. Miller joined Pinckney. They traveled north together, Pinckney operating his car, and reached the vicinity of St. Stephens about dark. About half a mile from St. Stephens the road traveled by them crossed the railroad from west to east. Pinckney testifies that he stopped his car and looked for trains; that he saw a light up at the depot, which appeared to be stationary; that they then crossed the track safely and proceeded along the road, parallel with the railroad, some 350 feet, to the store of one Shuler; that they stopped for a few minutes at Shuler's store, and then resumed their journey up the same street towards the street crossing. The night was dark, misty, and very cold; the street was soft and muddy; the curtain was up on Pinckney's side of the car, the left, but not on Miller's side; windshield and isinglass lookout were both spattered with mud. Pinckney testifies that the approach to the crossing was on a slight upgrade, and that they stopped at the foot of this grade; that he told Miller to look to the right, and that he looked to the left, neither seeing a train; that he could see the store lights on the opposite side of the railroad, but did not see the obstructing flat cars until he got on the north-bound track; that when he saw the obstruction he tried to reverse his engine, when instantly the crash came.

The specific acts of negligence relied upon by the plaintiff are:

(1) As to the Camp Company: That it and its engineer, Pulley, had placed and kept a train of cars across the street obstructing the railroad crossing unnecessarily and for an unreasonable time, and without safegaurds, lights, or warning to the public of such obstruction, in violation of law.

(2) As to the Coast Line: That it acquiesced in, consented to, and approved of the act of the Camp Company and its engineer in so obstructing the crossing.

(3) As to the Coast Line: That *by its engineer and fireman* it operated the passenger train at a high, excessive and dangerous rate of speed *in violation of law.*

(4) As to the Coast Line: That *by its engineer and fireman* it operated the passenger train without proper or adequate lookout, safeguards, and warnings, and without giving any proper or adequate signals of its approach, contrary to law.

The defendants answered, denying the material allegations of the complaint, and setting up contributory negligence on the part of the deceased. At the close of the evidence, motions for directed verdicts were made by the Camp Company and its engineer, Pulley, and by the Coast Line, which motions will be incorporated in the report of the case. The motions were refused.

The verdict of the jury was:

"We find for the plaintiff against the Atlantic Coast Line Railroad Company the sum of twenty-five thousand dollars, actual damages; we further find for the plaintiff against the Camp Manufacturing Company the sum of twenty-five thousand dollars, actual damages."

The defendants Camp Company and Coast Line each moved for judgment in its favor, notwithstanding the verdict, and failing, for a new trial, upon grounds which will be incorporated in the report of the case. The motions were refused, in an order which also will be reported. The defendants have appealed upon exceptions which will be reported.

*I.   Error in not directing a verdict in favor of both cor-
      porate defendants upon the ground of gross contribu-
      tory negligence on the part of the intestate.*

The undisputed facts, from the mouths of the *plaintiff's*
witnesses, speak for themselves:

Two young men in full possession of their faculties, fa-
miliar with the tracks and crossing in question at St.
Stephens, got into a Ford roadster at Shuler's store, about
400 feet below the fatal crossing, on a road parallel with and
adjacent to the railroad tracks. They drove a little past the
crossing, then turned back and approached the tracks on a
diagonal, the car being pointed slightly south of west. With-
in 5 feet of the first track the only survivor of the accident
states that he stopped to look, and, changing into low gear,
they proceeded across the track with one of the fast through
passenger trains of the Atlantic Coast Line Railroad Com-
pany bearing down on them, with its headlight burning, and
with the rush and roar that is incident to the progress of
such a train.

The principal witness for the plaintiff (Funk) states that
he saw the automobile first about 5 feet from the track, and
in his own words, "I seen them when they started to slow
down; I thought they were fixing to stop, but they went on
up on the track." That the train approaching was so clear to
the witness that he goes on: "They went up in a kind of V
shape on the tracks; they must have seen the train coming."
The above statement was made on direct examination. On
cross examination, in reply to the question, "You knew as a
matter of fact they ought to stop?" the same witness an-
swered, *"I knew something would happen if they went on."*

Miss Crooks, another witness for the plaintiff, standing
just beyond the western edge of the side track and within
a relatively few feet of the point of collision, testified that,
"just as they got on the crossing good," the train struck the
car; and this witness testified that she knew that the train
was coming and had seen it for three-quarters of a mile

away.   It was clearly established that, merely by turning one's head and looking, the approaching train could have been seen for miles.

The testimony of Pinckney himself is that he stopped to look toward the south, the direction from which the train was coming, about 5 feet from the track, at which point the approaching train could have been observed *for a distance of 11 miles.*   This is the only point from which he did look, which fact negatives any weight that might be given the contention of the plaintiff that there were trees further to the south which might obstruct the view.   The curtain was up on the left side of the car (Pinckney's side), and when his automobile was turned toward the west his view toward the south was thereby obscured.   The only opportunity to see of which he availed himself in looking toward the south was through a "light" in the curtain, covered with isinglass, which Pinckney admits was spattered with mud and did not afford him a clear vision.

Miller was looking toward the north and reported the way clear on that side.   The only inference to be drawn is that he took no precaution whatever as to looking toward the south, but relied on Pinckney's vision in a drizzling rain, through a mud-bespattered isinglass.   The windshield was also spattered with mud.   This, on a misty, rainy night, afforded slight opportunity for observation in going ahead.   Under these circumstances, fully aware of the position of the tracks, claiming to be aware of the possibility of danger and of the duty of stopping to ascertain whether it was safe to proceed, Pinckney and Miller drove on the tracks directly in front of the coming train, which by the slightest exercise of their senses of sight and hearing they could have discovered.

The cases of *Reynolds v. Atlantic Coast Line Railroad Co.,* 131 S. C., 208; 126 S. E., 449.   *Sauls v. Railroad Co.,* 129 S. C., 427; 125 S. E., 34, and *Manning v. Railroad Co.,* 129 S. C., 391; 125 S. E., 31, are generally conceded to have

gone far in fastening liability upon railroads where there was an alleged failure to give the statutory crossing signals, resulting in injury to persons using the highway. In the case at bar, however, different from those cases, there is no evidence of anything that might have obstructed the clear view of Pinckney, and, had he looked and listened at a place and in a manner that would have made the use of his senses effective, the conclusion is inescapable that he must have discovered the impending danger. Unless this Court specifically overrules the doctrine of *Cable Piano case,* 94 S. C., 143; 77 S. E., 868, and the *Chisolm case,* 121 S. C., 394; 114 S. E., 500, it can never decide that one who goes upon a railroad track in the face of an approaching train, whose presence he could discover by the slightest effective exercise of his sense of vision, is free from the charge of gross contributory negligence.

In view of the testimony of every eyewitness in the case, the fact that Pinckney testified that he looked, when the evidence shows that, if he had done so, he would have seen the train, is not acceptable as evidence that can create an issue. Of course, if this Court is ready to hold that there is no such thing as gross contributory negligence as a matter of law in a crossing case, that, no matter how apparent the gross contributory negligence is, it is an issue for the jury, this is the case in which to overrule the *Cable Piano case,* the well-considered Chisolm opinion, and other cases along that line, including the case of *Osteen v. Atlantic Coast Line Railroad Co.* (119 S. C., 438), 112 S. E., 352, where the Court *en banc* decided (quoting the syllabus in 112 S. E.) :

"If a truck driver attempted to cross immediately in front of an approaching train, although he saw the train, or by exercising the slightest degree of care could have seen and heard it, and to a person of ordinary prudence such an attempt to cross was obviously dangerous, reckless, or wanton, he was guilty of gross contributory negligence, recklessness, and wantonness *as a matter of law.*"

In the case at bar there were no diverting influences attributable to conditions produced or controlled by the railroad company, or of unusual conditions of any kind, which in any wise could have distracted the attention of Pinckney or of Miller from their duty to look before driving on the crossing directly in front of the train. This brings the case clearly within the doctrine of the *Cable Piano case,* unless, of course, the testimony of Pinckney that he looked and did not see the approaching train gives rise to an issue to be submitted to a jury, when it must be obvious that, had he looked with the slightest degree of effectiveness, he must have seen it.

It can hardly be seriously contended that, because Miller and Pinckney were traveling in rainy weather and had put. up a curtain on the left-hand side of their car, the consequent obstructions to a clear vision toward the south were diverting influences either controlled by the railroad company or so unusual as to warrant the distraction of the attention of Pinckney and Miller from their duty to look for a train approaching from the south. The rule as laid down in the *Chisolm case, supra,* 121 S. C., 394, 402; 114 S. E., 503, is as follows:

"On reaching a railroad crossing and before attempting to go upon the track, a traveler must use his senses of sight and hearing to the best of his ability under the existing and surrounding circumstances; he must look and listen in both directions for approaching trains, if not prevented from so doing by the fault of the railroad company, *and to the extent the matter is under his control* must look and listen at a *place and in a manner that will make the use of his senses effective.*"

In order effectively to bring themselves within this requirement, both Pinckney and Miller should have looked in each direction, it being entirely within their control either to unbutton the curtain of the automobile or to look around it to the south. The evidence is that Miller did not look to

the south at all and that Pinckney looked through the isin-
glass "light," which he admitted did not afford a clear vision.

II. *Error in not directing a verdict in favor of the defendant
    Camp Company, upon the ground that, assuming it to
    have been negligent in obstructing the crossing, the col-
    lision was not the proximate result of such negligence.*

It is not surprising, in view of the Circuit Judge's appre-
hension of the law of proximate cause, hereinafter criticized,
that the position of the appellant was not sustained.  As ap-
pears from the authorities hereinafter cited, upon another
phase of the question of proximate cause, the intervention
of an efficient cause is generally held to interrupt the se-
quence between the prime act and the injury, so that the
injury is referable to the intervening cause, the prime act
thereby becoming the *remote* and not the *proximate* cause.
It is clear, however, that if the intervening cause was not
an independent cause, but one which naturally, in the com-
mon experience of men, was itself a result reasonably to
have been apprehended from the prime act, the sequence
will not be held to have been interrupted, and the prime act
will be considered the proximate cause.  In other words, if
the intervening act resulted from the prime act, in a natural
and probable sequence, such as the prime wrongdoer should
have foreseen, the prime act is held to have been the proxi-
mate cause.

As is very clearly expressed by Mr. Justice Marion in the
case of *Green v. Railroad Co.,* 131 S. C., 124; 126 S. E.,
441; 38 A. L. R., 1448, the intervening efficient cause will
not be deemed the proximate cause, if "it is an unnatural
and abnormal intervention in the ordinary train of events
and consequences not reasonably to be anticipated from the
act or omission which is charged to the alleged tort-feasor
as a breach of duty."  See, also, *Foster v. Union,* 129 S. C.,
257; 123 S. E., 839.  In the latter, the opinion being written
by the same most careful judge, it is said:

13—S. C. 140

"Obviously, the foresight which the law imputes to a tort-feasor cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of the injury."

In the case at bar, the prime act was the negligent obstruction of the crossing; the intervening, efficient cause of the injury was the collision between the onrushing engine of the passenger train and the automobile in which the intestate was riding. The first natural inquiry is, what was the immediate cause of the collision? According to the allegation of the plaintiff's complaint, which he cannot get away from, the immediate cause of the collision was the failure of the railroad company to sound the proper warning signals of the approach of the passenger train to the highway crossing. *According to the evidence,* the immediate cause of the collision was the failure of the intestate, before entering upon the railroad track, to exercise the simplest precautions to ascertain whether he could safely enter upon the railroad track.

In this connection, as relating to the Camp Company, which is not charged with a violation of the signaling statute, and to the issue of proximate cause, it is proper to emphasize the fact that the Camp Company is not obliged to show that the entry of the intestate upon the railroad track was an act of *gross* negligence.

If the plaintiff's contention, as alleged in the complaint, be sustained, the signals for the crossing were not given by the railroad company; that failure caused the intestate to enter upon the track without the usual and necessary precautions; it caused it without justifying it, and was an intervening and efficient cause of the collision. If it be not sustained, as the verdict of the jury exonorating the employees of the railroad indicates, in fact adjudicates, the intestate's

entry was without the shadow of an excuse, itself an intervening, efficient cause, due to his negligence, which surely the Camp Company cannot be held bound to anticipate as a result of its act.

So that, between the prime act of negligence, the obstruction of the crossing, and the injury, certainly one or the other, or perhaps both, of two distinct, efficient causes intervened, the failure of the railroad company to sound the warnings, or the entry of the intestate upon the railroad track without precautions, neither of which can be said to have been a natural, probable, or reasonably to be apprehended result of the prime act.

In the case of *Foster v. Union, supra,* the intervening act was that of the father of the plaintiff. The rule should at least be *as strong* where the intervening immediate act was that of the person injured. The immediate cause of the collision being the entry upon the railroad track without the necessary precautions, the question revolves itself into this: Was that a result reasonably to be apprehended by the Camp Company under the circumstances?

To characterize the obstruction of the crossing, therefore, as the proximate cause of the injury, requires the utmost strain of mental processes to conclude either that the Camp Company should have foreseen that if it obstructed the crossing, either the railroad company would omit the crossing signals, or that the driver of an automobile, in defiance of all safeguards for his own protection, would drive upon a railroad track, in the face of a train traveling 40 miles an hour, the headlight of which could have been seen for eleven miles down the track. But it is said the absence of lights, or other warning of the presence of the obstructing cars, induced the intestate to enter upon the tracks. Possibly so, and it might have been a perfectly harmless venture; but it did not induce him to enter without reasonable precautions against what *the presence of the rails* warned him might happen, the coming of a train. Nor did it induce the railroad

company to omit giving the statutory signals or other warn-
ings of the approach of the train, which omission the plain-
tiff claimed, as against the railroad company, was the prox-
imate cause of the injury, and which he had the Circuit
Judge to charge that presumptively it was.   Nor could the
Camp Company reasonably have anticipated that the intes-
tate would not avail himself of a perfectly safe space of 25
feet between the north-bound track and the side track.

III. *Error in the Circuit Judge's definition of "proximate
cause."*

The following is the language of his charge referred to :

"In order that an injury be the proximate result of an
act, it is not necessary that the actor should have foreseen
the particular consequences or injury which resulted.   It is
enough if he should have foreseen that his act, if negligent,
would probably result in injury of some kind to some one
to whom he owes a duty."

The idea is accentuated by the modification of the de-
fendants' request to charge, in striking out the words "the
collision," and interpolating the words "some injury to
travelers on the highway" in lieu thereof.   To make the
matter plain I append the request; the words stricken out
are in brackets and the interpolation in italics :

"Even if you find from the evidence that the defendants,
Camp Manufacturing Company and its engineer, Arthur
Pulley, were negligent and willful in obstructing the crossing,
but that these defendants could not reasonably have antici-
pated that [the collision] *some injury to travelers on the
highway* would result from such obstruction, then I charge
you that, under such circumstances, such obstruction would
not be a proximate cause of the collision, although you find
the same to be a remote cause, and your verdict must, under
such circumstances, be in favor of these defendants."

The request as submitted was entirely right; the modifi-
cation set up a false standard which is obliged to have caused
confusion and consequently was prejudicial error.   The point

at issue was whether the obstruction of the crossing was
the proximate cause of the collision, the *particular injury,*
and was to be determined under the well-established rule
that it was such proximate cause if the *particular injury* was
a result reasonably to have been anticipated from the negli-
gent act.   *Keel v. R. Co.,* 122 S. C., 17; 114 S. E., 761.

Of course, as frequently held, it is not essential that the
wrongdoer actually foresaw the *particular* consequences or
injury that resulted, so long as it appears that there was an
unbroken sequence between the prime act of negligence and
the injury, and there would be such unbroken sequence if the
particular act, although not actually foreseen, was one of the
class of injuries which naturally, in common experience,
would result from the act of negligence, and therefore should
have been foreseen by a person of ordinary prudence.

To say that the obstruction of the crossing was the proxi-
mate cause of the collision, if the obstructing railroad com-
pany should have foreseen that its act would probably result
in injury *of some kind to some one,* is a statement of the
elements of negligence in the·act of obstruction, and is in no
sense a test of the question of proximate cause.   Scores of
instances have arisen in which railroad companies have been
held liable in damages for injuries directly resulting from
the obstruction of crossings by cars, the proximate results
thereof, such as the frightening of horses or teams; the di-
version of a loose horse into a cut, where he was killed by
another train (*Murray v. Railroad Co.,* 10 Rich, 227; 70
Am. Dec., 219) ; crashing into a standing car with a team,
ignorant of its presence; climbing under or between standing
cars (*Littlejohn v. R. Co.,* 49 S. C., 12; 26 S. E., 967) ;
damage of various kinds caused by consequent delay, such
as failure of a physician to reach a patient (*Terry v. Rail-
road Co.,* 103 Miss., 679; 60 So., 729; 44 L. R. A. [N. S.],
1069) ; failure of a fire engine to reach a fire (*Cleveland, etc.,
R. Co. v. Tauer,* 176 Ind., 621; 96 N. E., 758; 39 L. R. A.
[N. S.], 20) ; failure of a passenger to reach his train

(*Patterson v. R. Co.,* 56 Mich., 172; 22 N. W., 260) ; and doubtless others.

In *Lindler v. Railroad Co.,* 84 S. C., 536; 66 S. E., 995, the railroad company was held liable for leaving an engine standing on a street crossing in violation of a city ordinance, a horse having been frightened thereby and having run away. In *Prescott v. Hines,* 114 S. C., 262; 103 S. E., 543, a traveler collided with a standing train. From this experience, it is not wide of the mark to say that, in every case of such obstruction, the railroad company must anticipate that *some kind* of injury may probably result to *some one* therefrom. So that under the rule announced, the question whether the particular injury was the proximate result of the obstruction would be absolutely foreclosed by the fact that some other injury may have resulted which was the proximate result.

It is entirely possible that any number of injuries may result from the obstruction, and each one of them be the proximate result of the obstruction, and yet the particular injury under investigation may not have been. The rule forces the conclusion that the particular injury, which *was not* the proximate result, *is* the proximate result, because a dozen other injuries may have happened which were. The various instances tend to establish the fact that the obstruction of a crossing is an act of negligence, but they cannot establish the fact that a particular injury was a proximate result of the obstruction.

It is proper to state, in justice to the learned Circuit Judge, that his charge is sustained by the opinion of Mr. Justice Hydrick, as the organ of the Court, in the case of *Sandel v. State,* 115 S. C., 181; 104 S. E., 567; 13 A. L. R., 1268. I have endeavored to show that the doctrine thus announced cannot be sustained in reason or authority, and that it should not be followed. The test for proximate causes is exceedingly simple, as given by the Supreme Court of the United

States in the case of *Milwaukee, etc., R. Co. v. Kellogg,* 94 U. S., 469; 24 L. Ed., 256:

"In order to warrant a finding that negligence * * * is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and that it ought to have been foreseen in the light of the attending circumstances."

How different from the declaration in *Sandel v. State:*

"It is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted. *It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one.*"

In *Atchison, etc., R. Co. v. Calhoun,* 213 U. S., 7; 29 S. Ct., 321; 323 (53 L. Ed., 671), the Court said:

"One is held responsible for all the consequences of his act, which are natural and probable, and ought to have been foreseen by a reasonably prudent man."

*IV. Error in the modification of the defendants' request to charge in reference to the use of the side track and the blocking of the crossing.*

The following is the request; the modification is italicized:

"The use of a railroad side track for shifting cars or loading and unloading freight is a lawful use, and cannot be considered negligence or willfulness, even if a highway is temporarily obstructed thereby, unless such obstruction is *unnecessary* or for an unreasonable length of time, considered with reference to the existing circumstances."

The effect of the modification is to prescribe two conditions under which the obstruction will be considered negligence: (1) That there was no necessity for the obstruction; (2) that it continued for an unreasonable length of time *either of which* would make out a case of negligence against the railroad company. In other words, the modification means that it matters not how completely the railroad company may have established the fact that the obstruction had

not continued for an unreasonable length of time under the circumstances, the obstruction will be considered an act of negligence unless there was a necessity for it.

I do not think that this is the law; on the contrary, I think that the sole test is whether the crossing had been blocked for an unreasonable length of time, under the circumstances. The necessity upon a particular occasion may be a circumstance entering into the issue of reasonableness of time, but it cannot be an element which the railroad company must establish.

In *Littlejohn v. Railroad Co.*, 49 S. C., 12; 26 S. E., 967, the Court says:

"If a railroad company obstructs a highway *for an unreasonable length of time,* or for a longer time than the law permits, unless it is without fault, the railroad company thereupon becomes a trespasser."

Reaffirmed in *Walker v. Railroad Co.*, 77 S. C., 161; 57 S. E., 764; 12 Ann. Cas., 591.

There are doubtless many instances where a highway is temporarily blocked by a railroad in the shifting of cars on a side track, which it has constructed and has a right to use, which constitute a proper and reasonable use of its tracks, but which are not entirely necessary. For instance, frequently a train of cars is propelled or pushed across a highway for the purpose of leaving one car at a specified point. It might not be necessary for the whole train to be pushed or pulled across the thoroughfare, since it would be possible by extra shifting, and by the employment of an extra force, perhaps, to cut such cars off, shift the remainder to another track, and propel or push those to be delivered in such numbers as not to necessitate an obstruction of the highway. *The extra time particularly, and cost, all of which bear heavily upon the public, would not be justified, however, by denying the standard of reasonable use or practice and requiring the standard of necessity.*

When the trial Court adopted the unqualified test of necessity, it did away with the test of reasonable and ordinary use. In view of the fact that there was evidence in this case that there was sufficient space on the side track for the Camp train to have backed the flat cars past the station, across and below the crossing, to have cut them off and left them, and then to have pulled the box cars back up to the depot for the loading of freight, which loading ordinarily would not have taken more than from five to ten minutes, this charge amounted to a direction to the jury that the blocking of the crossing, being unnecessary, was improper, and constituted negligence.

V. *Error in charging the jury that the failure of a railroad company to give the statutory signals for a highway crossing raises a presumption that such failure was the proximate cause of a collision which may have occurred.*

A consideration of the cases of *Wragge v. Railroad Co.,* 47 S. C., 105; 25 S. E., 76; 33 L. R. A., 191; 58 Am. St. Rep., 870. *Strother v. Railroad Co.,* 47 S. C., 375; 25 S. E., 272. *Bowen v. Railroad Co.,* 58 S. C., 322; 36 S. E., 590. *Cable Piano Co. v. Railroad Co.,* 94 S. C., 143; 77 S. E., 868. *Peeples v. Railroad Co.,* 115 S. C., 115; 104 S. E., 541. *Burns v. Railroad Co.,* 65 S. C., 229; 43 S. E., 679. *Duncan v. Greenville,* 73 S. C., 254; 53 S. E., 367, and *Turbyfill v. Railroad Co.,* 83 S. C., 325; 65 S. E., 278, will show that the Court at one time recognized the rule as charged by the Circuit Judge, but has distinctly and specifically repudiated it, as particularly the cases of *Drawdy v. Railroad Co.,* 78 S. C., 374; 58 S. E., 980. *Chisolm v. Railroad Co.,* 121 S. C., 394; 114 S. E., 500. *Whaley v. Ostendorff,* 90 S. C., 281; 73 S. E., 186, and *Cirsosky v. Smathers,* 128 S. C., 358; 122 S. E., 864, demonstrate.

In *Whaley v. Ostendorff, supra,* in an opinion by the present Chief Justice, the Court declares:

"The fact that there is negligence *per se* does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the further question whether such negligence was the direct and proximate cause of the injury."

And in *Cirsosky v. Smathers, supra,* it is said:

"That the violation of a Statute, although declared negligence *per se,* must be shown to have been the proximate cause of the injury, or at least a contributing proximate cause, is abundantly shown by the authorities and sustained by common sense and justice."

VI. *Error in charging the law of imminent danger or emergency.*

The instruction to the jury was as follows:

"In considering whether or not a failure to look or listen was negligent, the jury may take into consideration any evidence, if any there should be, showing the presence of some imminent danger or emergency not brought about by the traveler's own negligence, or the presence or influence of unusual or extraordinary conditions not created or controlled by the traveler himself, and especially if such conditions are brought about by the railroad company, along with any and all other evidence in the case."

This was clearly error, since the duty "to look and listen" devolved upon Pinckney and Miller *before they went upon the tracks,* and this duty could not be qualified or lessened by any "imminent danger," since there was no "imminent danger" at that time. They could have stopped for hours before going on the track, and there would have been no imminent danger that could warrant any lessening of their legal duty to look or listen before going farther.

The effect of this charge was to excuse the failure of the occupants in their criminal carelessness and wantonness in driving on the tracks in front of train 82, and to allow the jury to adopt Pinckney's testimony of surprise at seeing the Camp train ahead of them to this inapplicable law, and

excuse everything on the ground of sudden peril and emergency.

The duty to "look and listen" arose before they drove on the first track. There was no need "to listen" for the Camp train; it was standing still on the third track, and had been standing still acccording to plaintiff's contention for more than 30 mnutes; hence this charge in effect directed the jury to search for some excuse for the failure to discover the presence of train 82.

Having driven on the tracks under the circumstances, when they discovered their peril, the doctrine of sudden emergency was not available to them, for their own gross contributory negligence had brought it about. It is fundamental to the application of that rule that he who invokes it must be without fault. *Dobbins v. S. A. L. R. Co.,* 108 S. C., 254; 93 S. E., 932.

*VII. Error in refusing the motion of the Camp Company for a new trial, upon the ground that the liability of that company having been predicated solely upon the negligence of the engineer, and the verdict of the jury having exonerated the engineer, a verdict against the Camp Company is without a foundation.*

The only act of negligence attributed to this company, *in the complaint,* is that it, through its engineer, Pulley, had placed and kept a train of cars across the street, obstructing the railroad crossing unnecessarily and for an unreasonable time, and without lights or warnings to the public of such obstruction, in violation of law. The jury having found a verdict *in favor* of the engineer, the necessary, inevitable, result of this finding is to exonerate the Camp Company from liability based solely upon such alleged negligent act of its engineer. The motion of the Camp Company for a new trial, upon this ground, should have been sustained.

There is in the complaint no *general* allegation of negligence charged against the Camp Company. The allega-

tion is that the defendant Pulley *was at the time of the fatal collision in charge as engineer of a logging or freight train of the Camp Company,* and that the Camp Company and its engineer, Pulley, placed that train across the street and obstructed the crossing unnecessarily and for an unreasonable time, which can only mean that the basic act of negligence was that of Pulley, which, imputed to his master, fixed liability upon it.   There is no other act of negligence alleged on the part of the Camp Company, and nothing in the complaint or in the evidence, tending to show that the plaintiff intended to rely upon the negligent act of any other servant for which Pulley was not responsible.   Even if the complaint should be construed as containing a general allegation of negligence on the part of the Camp Company, the established rule is that, except in cases involving the relation of passenger and carrier, a general charge of negligence against the master, coupled with a specific charge against either the master or the servant, will be regarded as explained and controlled by the specific act averred, in the absence of some clear indication in the complaint that the general negligence was intended to cover other acts of negligence than those alleged.

In the case of *Sutton v. Railroad Co.,* 82 S. C., 345; 64 S. E., 401, which was an action brought by a passenger for injuries sustained as such, there was a general allegation of negligence on the part of the carrier, coupled with a specific charge against a servant of the carrier.   The Court cited with approval the general rule declared in *Goodwin v. Railroad Co.,* 76 S. C., 557; 57 S. E., 530, to the effect that:

"When a complant contains allegations of specific acts of negligence, and also general allegations of negligence, the general allegations should be regarded as explained and controlled by the specific acts of negligence averred, in the absence of some clear indication in the complaint that the general allegations were intended to cover other acts of negligence than those alleged."

The Court, however, held that:

"In the application of the general rule stated in *Goodwin v. Railway*, 76 S. C., 560; 57 S. E., 530, the material distinction must be observed between a suit by a passenger against a carrier, where the presumption mentioned applies, and a suit by some other person not a passenger, as employee, trespasser, or licensee, in which the presumption of negligence does not necessarily arise upon mere proof of injury by some agency or instrumentality of the carrier. The cases cited by appellant to sustain his contention were not cases by a passenger against a carrier, but were cases in which it was essential to recovery to show the specific act of negligence alleged."

From which it is plainly to be inferred that, in all but passenger and carrier cases, the doctrine declared in the *Goodwin case* is applicable, that a general charge of negligence is controlled by the specific, with the limitation expressed in the above quotation. In all cases, passenger and carrier and others, where the complaint contains a specific charge of negligence against the master, coupled with a similar charge against a servant, separate and distinct from the other, a verdict in favor of the servant does not exonerate the master, for the obvious reason that it may be referred to the specific act charged against the master.

But where the complaint contains neither general or specific charges against the master, and the plaintiff relies solely upon the specific act charged to the servant, imputed to the master, the authorities in this State are simply overwhelming that, if the jury's verdict should exonerate the servant and be against the master alone, it cannot stand. This is true, even in passenger and carrier cases. *Durst v. Railroad Co.*, 130 S. C., 165; 125 S. E., 651.

In *Sparks v. Railroad Co.*, 109 S. C., 145; 95 S. E., 344, the action was against the railroad company and its conductor, jointly, based upon the alleged willful act of the conductor in pitching a trespasser off the train. The jury

rendered a verdict against the company alone.   The Court held that the verdict against the company could not stand, as its liability depended upon the act and intent of the conductor, an issue which the jury had decided in favor of the conductor.   The judgment against the company was reversed and a new trial ordered.   Upon the second trail the company pleaded the judgment in favor of the conductor (Jones) as a bar to the further prosecution of the action. The Circuit Court "sustained the plea in so far as the liability of the company depended upon the acts of Jones, holding that Jones and his alleged wrongful acts were out of the case, as the verdict and judgment in his favor amounted to an adjudication that he was guilty of no actionable wrong."   The Court held:

"It follows that the Circuit Court correctly ruled that the matters involved in the judgment in favor of Jones were *res adjudicata,* and therefore Jones and his alleged wrongful acts were out of the case, and the company could not be liable for them.   In fact, it had been finally adjudicated that Jones had done no wrong.   *It necessarily follows that the company had done no wrong through the agency of Jones."*

In the meantime—that is, between the first and second appeals in the *Sparks case*—the case of *Jones v. Railroad Co.,* 106 S. C., 21; 90 S. E., 183, arose.   In that case the alleged liability of the company was based solely, in the complaint, upon the wrongful acts of certain servants of the railroad company.   The jury rendered a verdict against the company alone.   The Court said:

"Under the recent decisions in *Sparks v. Railroad Co.,* 104 S. C., 266; 88 S. E., 739, and *Jenkins v. Railroad Co.,* 89 S. C., 408; 71 S. E., 1010, the verdict is illogical and cannot stand, as no delict of the company was proved, other than through and by the agency of Parks and Gilliard [the servants joined], one or both.   The company's liability is predicated solely upon the acts or omission of one or both of them; and, if neither of them is liable, it necessarily fol-

lows that the company is not.   It would be unreasonable to say that the servant did no wrong, but nevertheless his master is liable, when the only wrong. charged against the master is that of the servant."

In *Spigener v. Railroad Co.*, 111 S. C., 405; 98 S. E., 330, the Court said:

"Where a servant is united with the master in an action for damages for tort, and the allegation and proof shows that the tort complained of was the tort of this servant alone, then a verdict against the master alone cannot stand, because, if this servant did not commit the tort complained of, then there was no tort, and a verdict against the master alone cannot stand."

In *Beauchamp v. Winnsboro Granite Corp.*, 113 S. C., 527; 101 S. E., 856, 858, the Court said: '

"Where master and servant are sued together for the same tort, and the master's liability is predicated solely upon the conduct of the servant, a verdict alone against the master is illogical, and cannot be sustained, because it in effect finds that the servant did no wrong, but nevertheless holds the master liable, when the only wrong charged against him is that of the servant. * * * In the *Jones case* it was said that in all the cases in which the master and servant were sued jointly for the same tort, and a verdict against the master alone had been sustained, there was evidence either of a joint tort of master and servant, or of some separate and independent delict of the master, or some other servant, for which the servant sued with the master was not liable" —citing *Sparks v. Railroad Co.*, 104 S. C., 266; 88 S. E., 739.  *Jones v. Railroad Co.*, 106 S. C., 20; 90 S. E., 183.

In *Howell v. Railroad Co.*, 114 S. C., 21; 102 S. E., 856, the Court said:

"But the acquittal of Williams will not affect the acquittal of the railroad, unless Williams was the only agency by which the event could have been compassed."

In other words, that, if the liability of the railroad was based solely upon the act of Williams, his acquittal would acquit the railroad.

In *Durst v. Railroad Co.,* 130 S. C., 165; 125 S. E., 651, it is held:

"In an action against the master and servant jointly, based solely upon the negligence of the servant, a verdict against the master alone will not be allowed to stand."

In *Jenkins v. Railroad Co.,* 130 S. C., 180; 125 S. E., 912, the cases of *Sparks,* 109 S. C., 145; 95 S. E., 344. *Jones,* 106 S. C., 20; 90 S. E., 183, and *Sparks,* 104 S. C., 266; 88 S. E., 739 (second appeal), are reaffirmed; the Court holding:

"If, in an action against the master and the servant jointly, the alleged liability of the master is based solely upon an alleged act of negligence on the part of the servant, and a verdict is rendered in favor of the servant and against the master, the judgment will be set aside as resting on a 'baseless fabric.' "

In *Jenkins v. Railroad Co.,* 89 S. C., 408; 71 S. E., 1010, the plaintiff first sued the lessor company for damages on account of a personal injury while a passenger on a train operated by a lessee company. Judgment in favor of the lessor company was rendered. Thereafter the plaintiff brought a second action upon the same cause of action against the lessee company. The defendant pleaded the judgment in favor of the lessor company in bar of the second action. The plea was sustained by this Court:

"As the liability of the C. N. & L. [the lessor company, first sued] is predicated upon that of the defendant [the lessee company, held to have been the agent of the lessor company], and as it would be liable for anything for which the defendant is liable, in respect to the matter complained of, the logical conclusion necessarily is that if the C. N. & L. [lessor] is not liable, the defendant is not. Now, as between the plaintiff and C. N. & L., it has been conclusively ad-

judicated that the C. N. & L. is not liable. Therefore, the defendant is not, and the former judgment is a bar to this action."

That case is direct authority for the proposition that a judgment in favor of a master or principal is *res adjudicata* in a subsequent suit against the servant or agent based upon the identical cause of action upon which the principal or master was first sought to be held. The converse of that proposition is equally true as has been shown. The Court further said:

"In *Logan's case* [82 S. C., 522; 64 S. E., 515], and also in *Rookard's case,* 84 S. C., 190; 65 S. E., 1047 [27 L. R. A. (N. S.), 435; 137 Am. St. Rep., 839], it is stated that a judgment on the merits in favor of a lessee railroad company [the agent of the lessor company] would bar an action against the lessor for the same cause, because the liability of the lessor is predicated upon that of the lessee. In other words, if the operating company, the one that actually does the injury, is held not to be liable, it follows that the lessor, upon whom the law imposes liability only for the acts of the lessee, cannot be liable."

In *Rookard v. Railroad Co.,* 84 S. C., 190; 65 S. E., 1047; 27 L. R. A. (N. S.), 435; 137 Am. St. Rep., 839, the Court said:

"A judgment on the merits in favor of the agent is a bar to an action against the principal for the same cause, because the principal's liability is predicated upon that of the agent."

See, also, *Logan v. Railway Co.,* 82 S. C., 518; 64 S. E., 515.

An additional reason for sustaining this conclusion is given in the *Jones case,* 106 S. C., 21; 90 S. E., 183, and in the *Sparks case,* 109 S. C., 145; 95 S. E., 344. It is thus expressed in the *Jones case:*

"There is another reason why the verdict cannot be sustained. The company's liability is predicated solely upon the conduct of its servant under the doctrine *respondeat superior;* and, under the facts and circumstances proved, if the company is liable to plaintiff, the servant or servants whose wrongful acts or omissions actually caused the injury are liable over to the company for the amount which it will be compelled to pay on account thereof. But, as the verdict acquits both the servants of having done any wrong, the company is deprived of its remedy against the offending servant or servants, because the judgment in this case would be a bar to an action by the company against either or both of them."

The verdict in favor of the engineer can mean nothing if it does not mean that he did not unnecessarily and for an unreasonable time block the crossing with his train, and that he did not fail in an alleged duty to safeguard, light or warn the public of the presence of the obstruction. So that it appears beyond the shadow of a doubt that, the complaint counting solely upon the negligent act of the engineer, and the verdict negativing the alleged negligence, there is no foundation for a verdict against the Camp Company.

*VIII. Error in refusing the motion of the Coast Line for a new trial, upon the ground that the liability of that company having been based upon its negligence in consenting to, acquiescing in, and approving of the act of the Camp Company in obstructing the crossing, and the verdict of the jury having exonerated the Camp Company from negligence in this respect, a verdict against the Coast Line upon this ground is without a foundation.*

The first act of negligence attributed to this company, *in the complaint,* is that it acquiesced in, consented to and approved of the act of the Camp Company and its engineer in placing and keeping a train of cars across the street, ob-

structing the crossing unnecessarily, and for an unreasonable time, and without safeguards, lights, or warnings to the public of such obstruction, in violation of law. The jury having found a verdict in favor of the engineer, thereby exonerating the Camp Company from any imputation of negligence in this regard, it is impossible to predicate negligence to the Coast Line in acquiescing in, consenting to, and approving an act which is conclusively determined by the verdict of the jury not to have been an act of negligence.

It will be observed in this connection that the complaint does not charge the Coast Line with a failure to provide safeguards, lights, or other warning to the public of the presence of the obstruction. It is clear that the phrase "with the consent, acquiescence, and approval of its codefendant Atlantic Coast Line" was intended to amplify the charge of negligence on the part of the Camp Company and its engineer, and not a charge of negligence against the Coast Line. But, assuming that it was so intended, it could only amount to a charge that the Coast Line acquiesced in, consented to, and approved of what the Camp Company had done, and surely such conduct on its part could not be considered negligence, when the act itself has been judicially determined not to have been an act of negligence.

In permitting the Camp Company to operate its train upon the track of the Coast Line, the Camp Company was a licensee, and in the performance of duties owing to the public the Camp Company occupied the position of a lessee or agent of the Coast Line. The verdict exonerating the engineer exonerated the Camp Company, and the exoneration of that company as the agent of the Coast Line exonerated the latter. See reference to *Jenkins v. Railroad Co.,* 89 S. C., 408; 71 S. E., 1010, above.

IX. *Error in refusing the motion of the Coast Line for a new trial upon the ground that the liability of that company having been predicated upon the negligence*

*of its employees in not giving warning of the approach of the passenger train, and the verdict of the jury having exonerated said employees, a verdict against the Coast Line, upon this ground, is without a foundation.*

The second act of negligence attributed to this company, *in the complaint,* is that, by its engineer and fireman, it operated the passenger train at a high, excessive and dangerous rate of speed, in violation of law. A verdict having been practically directed by the Court in favor of the fireman and the jury having found a verdict in favor of the engineer, the necessary, inevitable, result of this finding is to exonerate the Coast Line from liability based upon such alleged negligent act of its · engineer and fireman.    See authorities cited above.

The third act of negligence attributed to this company, *in the complaint,* is that *by its engineer and fireman* it operated the passenger train without proper or adequate lookout, safeguards, and warnings, and without giving any proper or adequate signals of its approach, in violation of law. A verdict having been practically directed by the Court in favor of the fireman, and the jury having found a verdict in favor of the engineer, the necessary inevitable result of this finding is to exonerate the Coast Line from liability based upon such alleged negligent acts of the engineer and fireman.    See authorities cited above.    It is declared in the leading opinion:

"Where the servant or employee sued was not the only agency *under the pleadings and evidence* which could have committed the wrong, then acquittal of the servant is not a discharge of the master."

—which is a distinct recognition of the converse proposition, that where the servant or employee sued *was* the only agency under *the pleadings and evidence* which could have

committed the wrong, the acquittal of the servant *is* a discharge of the master.

The proposition is freely conceded that, if the pleadings and evidence allege and establish an act of negligence chargeable to the master alone, or to a servant other than the one sued, the acquittal of the servant sued does not work an acquittal of the master. As is said in the *Jones case:*

"Examination of the cases relied upon by respondent in which verdicts against the master were sustained, notwithstanding the acquittal from liability of his codefendant servant, will show that, in each of them, there was evidence either of a joint tort of master and servant, or of some separate and independent delict of the master for which the servant was not liable."

This obviously does not mean that, in violation of all well-recognized rules of pleading, the plaintiff may recover upon an act of negligence not alleged in the complaint, simply for the reason that it may appear in the evidence; that is to say, that if the complaint alleges a specific act of negligence against the master and a specific act against the servant, he may recover upon either or both of the acts alleged, but he may not recover upon a specific act against the master, or a specific act against the servant, or a specific act against some other servant, not alleged in the complaint.

In *Spires v. Railroad Co.,* 47 S. C., 28; 24 S. E., 992, it is held that under a general allegation of negligence, in the absence of a motion to make more definite and certain, the plaintiff may introduce any competent evidence to show negligence on the part of the defendant. But the Court adds:

"If the complaint had alleged specific acts of negligence, * * * then the plaintiff would be restricted to the introduction of such testimony only as would tend to prove the acts of negligence alleged in the complaint" (opinion by the present Chief Justice).

In *Proctor v. Railroad Co.,* 61 S. C., 170; 39 S. E., 351, after quoting the foregoing extract from the *Spires case,* the Court says :

"This is for the obvious reason that it is neither fair nor just to require a party, who is brought into Court and called upon to answer for certain specified misconduct, to answer for other misconduct of a totally different character with which he has not been charged, as he cannot reasonably be expected to be prepared to answer, as no such charge has been brought against him."

In *Goodwin v. Railroad Co.,* 76 S. C., 557; 57 S. E., 530, the Court said :

"Where a complaint is general in its allegation of negligence and the defendant does not move to have the allegations made definite and certain, the plaintiff may introduce under the general allegations any competent evidence to support the charge of negligence. *Spires v. Railroad Co.,* 47 S. C., 30; 24 S. E., 992. *Johnson v. Railroad Co.,* 53 S. C., 209 [303] ; 31 S. E., 212 [69 Am. St. Rep., 849], but where the complaint alleges specific acts of negligence the plaintiff is restricted to proof of such acts of negligence" (citing cases).

Approved in the later case of *Sutton v. Railroad Co.,* 82 S. E., 345; 64 S. E., 401, where the above question is adopted.

In *Fell v. Railroad Co.,* 33 S. C., 198; 11 S. E., 691, the Court held that, where there was an entire absence of evidence *as to the only act of negligence alleged in the complaint* as the ground of the plaintiff's action, a nonsuit was proper.

In *Jenkins v. McCarthy,* 45 S. C., 278; 22 S. E., 883, the

(Note.—This case has been overruled in *Furman v. Tuxbury,* 112 S. C., 71; 99 S. E., 111, upon another point, not at all affecting the foregoing.)

plaintiff was strictly confined to the sole act of negligence alleged in the complaint.

In *McKain v. Water Co.,* 89 S. C., 378; 71 S. E., 949, the Court said:

"In the case of *Spires v. Railroad Co.,* 47 S. C., 28; 24 S. E., 992, the rule is thus stated: If the complaint alleges specific acts of negligence, then the plaintiff will be restricted to the introduction of such testimony only as would tend to prove the acts of negligence alleged."

Since the acts of negligence charged to the Camp Company through its engineer, and to the Coast Line through its engineer, have been eliminated by the verdict in favor of these servants, the only conceivable theory upon which the plaintiff can hope to sustain the verdict against these masters alone is that the blocking of the crossing, even for a reasonable time and of necessity in the operation of the logging train, with the acquiescence, consent, and approval of the Coast Line, created a situation of peril, a *cul de sac,* into which the automobile would not have been driven if Pinck- · ney and Miller had been suitably warned by flag or light of the situation by one or the other or by both of these corporations. This is the theory upon which the leading opinion proceeds, as I understand it.

There are sufficient objections to sustaining this contention. In the first place, the negligence charged to the Camp Company, alone through its engineer, is in placing the train on the crossing and keeping it there an unnecessary and unreasonable time, without any safeguards, lights, or warnings to the public of such obstruction. The verdict of the jury has established the innocence of the engineer and the Camp Company of these alleged delinquencies; it is not permitted to the plaintiff to limit this exculpation to the blocking of the crossing unnecessarily and for an unreasonable time, and to insist that the alleged failure to safeguard, light, or warn, is still open; that is a part of the entire charge, and is con-

cluded by the verdict. In the next place, the complaint does not count upon a breach of duty on the part of the Coast Line to safeguard, light, or warn; it only alleges that the Coast Line acquiesced in, consented to, and approved of the alleged delinquencies of the Camp Company and its engineer, delinquencies which the verdict has established did not exist.

   X.  *Error in refusing the motion for a new trial as to both corporate defendants, upon the ground that, the verdict of the jury in favor of the employees of the Coast Line having eliminated the plaintiff's cause of action based upon the signaling statute, the defense of ordinary contributory negligence was open to both defendants. The evidence is susceptible of only one inference, at least that the collision was due to the ordinary contributory negligence of the intestate.*

The verdict of the jury having eliminated the charge of negligence against the engineer of the passenger train in not sounding the statutory signals, the case becomes one of negligence at common law and not under the statute. In such common-law action the defendant may be exculpated by showing contributory negligence on the part of the person injured, of an ordinary character, not of the degree of gross or willful negligence, or acting in violation of law, as is required in an action under the statute.

Viewing it, then, as an action at common law, I do not see how it is possible to arrive at any other conclusion than that the collision was due to the contributory negligence of the plaintiff's intestate. See observations above in reference to the gross contributory negligence of the intestate. In reality, the defendant Camp Company had the right to rely upon the ordinary contributory negligence of the intestate, as that company was not charged with the breach of statutory duty in the matter of signaling for the crossing.

*XI.  Error in refusing the motions of the corporate defend-*
*ants for judgments in their favor notwithstanding the*
*verdict.*

If the authorities which have been cited above, to the
effect that a verdict acquitting the agent upon whose act
the principal is sought to be held liable amounts to an ac-
quittal of the principal, it logically must follow that in such
case the principal is entitled to immediate judgment in his
favor.   It would be useless to remand the case for a new
trial, when upon the record the Court must direct a verdict
for the principal.

*XII.  A reversal of the judgment against the Camp Com-*
*pany, upon whose negligence the liability of the Coast*
*Line is predicated, demands a reversal of the judgment*
*against the Coast Line.*

It may be suggested that the judgment against the Camp
Company may be reversed, and that against the Coast Line
be affirmed.   I do not think that in justice to the latter com-
pany this can be done.   As I have endeavored to show, the
acts of negligence charged against the Coast Line, through
the alleged defaults of its servants operating the passenger
train, fade from the case. by reason of the verdict excul-
pating those servants.   All that remains is the supposed con-
nection of the Coast Line with the act of the Camp Com-
pany, in wrongfully obstructing the crossing, and failing to
put out warnings to the public.   That connection is assumed
to be the consent, acquiescence, and approval of the Coast
Line of the act of the Camp Company.   But, as the Camp
Company has been exonerated by reason of the verdict ex-
culpating its engineer, I do not see how it is possible to pred-
icate a verdict against the Coast Line upon its participation
in an act which has been adjudicated free from negligence.

It may be insisted, however, that as to the Coast Line the
verdict may be referred to the neglect of that company,
after permitting the obstruction, to put out some kind of

warning to the public of its presence. This cannot be, for there is no such allegation in the complaint. See paragraph 6 (a) which charges such neglect solely to the Camp Company. Assuming that the Camp Company was negligent in the matter of the obstruction of the crossing (as to which there has been an express adjudication to the contrary, in the acquittal of its agent charged therewith), the Coast Line could be held liable only upon the charge (if it be anything more than an amplification of the charge against the Camp Company) that it consented to, acquiesced in, and approved of such obstruction by the Camp Company. The allegation of the complaint is that:

The "defendant Camp Manufacturing Company and its engineer, Arthur Pulley, with the consent, acquiescence, and approval of its codefendant Atlantic Coast Line Railroad Company, had placed and kept a train of cars on a track of Atlantic Coast Line Railroad Company and across the public highway and crossing of said road, obstructing the crossing of said highway and said railroad necessarily and for an unreasonable length of time, and without any safeguards, lights, or warnings to the public of such obstruction."

This is quite far from a charge of negligence against any other than the Camp Company. But, assuming that it was intended as a charge of negligence against the Coast Line, it does not allege any participation by the Coast Line in the act specifically charged against the Camp Company, so as to make the latter *in pari delicto* with the Camp Company; its liability could be only a constructive liability, as that of a principal for the act of his agent. In such a case the principal, upon paying the damage caused by its agent, has recourse against the agent for reimbursement. To allow the verdict against the Coast Line to stand, and reverse the verdict against the Camp Company, would necessarily deprive the Coast Line of this right of reimbursement.

The only evidence connecting the Coast Line with the act of the Camp Company is that the station agent of the Coast Line directed the engineer of the Camp Company's train to back his train until the box car, into which the freight was to be loaded, was opposite the door of the warehouse through which it was to be trucked, and that under the law he could block the crossing with his train for ten minutes. There is no evidence tending to show that under the circumstances ten minutes would have been an unreasonable length of time within which to stop the train and complete the loading. The effort of the plaintiff to prove that the blocking continued for 15 or 20 minutes is a tacit concession that 10 minutes would not have been an unreasonable length of time. And, if not the agent directed the engineer to do what the law permitted him to do. If the engineer exceeded the direction of the station agent, I do not see how it is possible to hold that the Coast Line participated in and was *in pari delicto* with the engineer in the unlawful obstruction of the crossing.

The most that can be said of the connection which the Coast Line had with the obstruction of the crossing by the Camp Company is that it gave permission to use its property for a perfectly lawful purpose, and the fact, if it be a fact, that the Camp Company availed itself of this permission to do an unlawful act, in no sense made the Coast Line a participator therein, and, if the Coast Line could be held liable for the act of the Camp Company, it assuredly, under these circumstances, would be entitled to reimbursement. As is said in 38 Cyc., 493:

"Although it is established that a joint wrongdoer, who has been forced to respond in damages, cannot require indemnification at the hands of his co-tort-feasors, there are two classes of cases which constitute exceptions to the rule: First, where the party claiming indemnity has not been guilty of any fault except technically or constructively; and,

second, where both parties have been in fault, but not in the same fault, towards the party injured, and the party from whom indemnity is claimed was the primary and efficient cause of the injury."

In *Westfield Gas & Milling Co. v. Noblesville & E. Gravel Road Co.,* 13 Ind. App., 481; 41 N. E., 955; 55 Am. St. Rep., 244, it is said:

"The rule that there is no contribution nor right of indemnity between joint tort-feasors does not apply to a case where one does the act or creates the nuisance, and the other does not join therein, but is thereby exposed to liability" (that is for damages).

Speaking of the general rule of no contribution between joint wrongdoers, it is said in 31 C. J., 455:

"The general rule, however, does not apply, and there may be a recovery of indemnity, where the person seeking indemnity and the person from whom indemnity is sought are not *pari delicto,* as where, although the relation of the party seeking indemnity to the negligent or wrongful act is such that he is liable therefor, he did not join in such act, or did not know and was presumed to know that the act was wrongful, or where he was only technically or constructively at fault, as from a failure to perform some legal duty, and the negligent or wrongful act of the party from whom indemnity is sought was the primary or proximate cause of the injury, or where both parties were at fault, but not in the same fault toward the person injured, and the fault of the party against whom indemnity is claimed was the primary and efficient cause of the injury. Thus, although a municipality, through its general duty as to the safety of its streets, is constructively at fault in neglecting to repair a defect or remove an obstruction on the city streets, and is compelled to pay damages to one injured by reason of such defects or obstructions, it is entitled to be indemnified by the person who caused such defect or

obstruction and who, therefore, was the efficient cause of the injury, *and the fact that it consented to the operation* which caused the defect or obstruction does not make it a joint tort-feasor so as to prevent it from being indemnified."

"But to render this rule [the general rule of no contribution] applicable there must be a joint participation in the tort, and the parties must be guilty in equal degree; actual knowledge and failure of duty of one of the parties are not sufficient to invoke the rule." *Id.*

See, also, 6 R. C. L., 1055.

"Where two or more are acting lawfully together in the furtherance of a common lawful purpose, one is not liable for the unlawful act of another, done in furtherance of the common purpose without his concurrence." 26 R. C. L., 767.

See, also, the innumerable cases cited in support of the above quotation from 31 C. J., 455, and especially the case of *Washington Gaslight Co. v. District of Columbia,* 161 U. S., 316; 16 S. Ct., 564; 40 L. Ed., 712.

It may be assumed, as the authorities seem to hold, that if the Coast Line consented to, acquiesced in, and approved of the act of the Camp Company in *unlawfully* obstructing the crossing for an unreasonable length of time, it became a joint tort-feasor with the Camp Company in such unlawful act. 26 R. C. L., 767. *Richardson v. Emerson,* 3 Wis., 319; 62 Am. Dec., 694. *Guille v. Swan,* 19 Johns. (N. Y.), 381; 10 Am. Dec., 234. *Brittain v. McKay,* 23 N. C., 265; 35 Am. Dec., 738. *Ross v. Fuller,* 12 Vt., 265; 36 Am. Dec., 342. But the evidence does not tend to show a permission to do other than a perfectly legitimate act, to block the crossing for 10 minutes, which does not appear to have been an unreasonable length of time; and even if it had consented, etc., to such an unlawful act, although joint tort-feasor, it would not have lost the right of indemnity from the actual perpetrator of the tort.

*XIII.    Error in permitting the cross examination of the
witness Huggins as to a statement of an opinion alleged
to have been made by him relating to the cause of the
collision, and in permitting contradictory testimony
in the denial of Huggins that he had made such state-
ment.*

Upon cross examination Huggins was asked by counsel
for the plaintiff whether, upon a certain occasion, he had
made the statement that the collision would not have oc-
curred if the Camp Company had not obstructed the cross-
ing.    He replied that he had made no such statement, but
had said that the collision would not have occurred if the
travelers had continued over the crossing.    Objection was
interposed upon the ground that the matter was collateral
and merely the expression of an opinion.    In reply, over
similar objection, testimony was allowed that he had made
the statement attributed to him.    It is generally held that
a witness may not be impeached with reference to state-
ments made by him upon collateral matters.    *State v. Wyse,*
33 S. C., 582; 12 S. E., 556.    *State v. Adams,* 49 S. C.,
414; 27 S. E., 451.    *Jones v. McNeill,* 2 Bailey, 466.

It is not always easy to determine what is a "collateral
matter."    Mr. Wigmore says, in 2 Wig., Ev. (1st Ed.), §
1003 :

"The test that is dictated by the principle above explained,
and the only test in vogue that has the qualities of a true
test—definiteness, concreteness, and ease of application—
is that laid down in *Attorney General v. Hitchcock; could
the fact, as to which error is predicated, have been shown
in evidence for any purpose independently of the contradic-
tion?"* (Italics by the author.)

I do not think that there can be a doubt under the deci-
sions of this Court and everywhere else, but that the fact,
in reference to which the contradiction is attempted, must
be a fact relevant to some issue in the case.

"Contradictory statements of a witness, to be admissible for the purpose of impeachment, must be *material to the issue,* and must ordinarily be a statement of fact and not a mere opinion of the witness." 28 R. C. L., 634.

"It is not permissible to impeach a witness by showing that he has made contradictory statements as to collateral, irrelevant or immaterial matters, and the test is whether, if the matter alleged to have been stated by the witness out of Court were true, the party seeking to impeach the witness would be entitled to prove such matter in support of his case." 40 Cyc., 2699, citing perhaps 100 cases.

In *State v. Alexander,* 2 Mill, Const., 171, the Court said:

"But a witness cannot be examined [as] to matters irrelevant to the issue, for the purpose of contradicting his testimony on these matters, and thereby impeaching his testimony."

In *Smith v. Henry,* 2 Bailey, 118, it is held that it is only as to matters relevant to the issue that a witness can be contradicted for the purpose of impeachment. In *State v. Adams,* 49 S. C., 414; 27 S. E., 451, the Court says:

"It is equally well settled that it is not competent to offer testimony tending to contradict the witness as to *irrelevant* or merely collateral matter."

In *State v. Watson,* 94 S. C., 458; 78 S. E., 324, the Court quotes with approval the following extract from the opinion in *State v. Hasty,* 76 S. C., 105; 56 S. E., 669:

"The presiding Judge ruled that the testimony therein mentioned was irrelevant, and that it was not competent for the purpose of contradiction, as it related to a collateral question. This Court is satisfied that the testimony was not only irrelevant, but that it was not admissible, for the purpose of discrediting the witnesses for the State therein mentioned."

In *People v. Chin Mook Sow,* 51 Cal., 597, it is said:

"Where the question asked on cross examination calls for a response in respect to a matter *which the party asking .the question would have a right to prove as an independent fact,* the rule [as to collateralness] does not apply."

See, also, to the same effect: *State v. Jones,* 74 S. C., 456; 54 S. E., 1017. *State v. Tidwell,* 100 S. C., 249; 84 S. E., 778. *Harbert v. Railroad Co.,* 78 S. C., 537; 59 S. E., 644.

The test of relevancy in this case is whether, if the witness Huggins, who was sought to be impeached, had been a witness for the plaintiff, he could have testified to the matter contained in the statement attributed to him, that *in his opinion* the collision would not have occurred if the Camp Company had not obstructed the crossing. The connection of Huggins to the transaction, where he was, what he was doing, what he saw, and what he had the opportunity of seeing, as testified to by him before the question was asked, was as follows: He and his wife were standing in front of Osterman's store, which is very near Funk's store, south of it, and nearly opposite the crossing; he observed the approach of the passenger train, heard certain signals given by it, and noticed the Ford car as it passed going in the direction of the crossing. He stated that he did not see the collision, and it is apparent from both his testimony and the testimony of his wife that they did not know anything had happened until some one rushed up and announced the news. It will also be noted that the witness admitted that he had thought that the automobile had gotten across. He admitted that he did not see the accident. He was watching the train as it approached and was not giving particular thought to the automobile one way or the other. *There is nothing to show that he saw the car go beyond the crossing, turn to come back,* and stop before proceeding on the track, and any view which the witness might express as to the cause of the accident was mere conjecture.

As I understand the law as declared by this Court, the *general rule* is that a nonexpert witness may not give his opinion in reference to the issues involved in a case, but that to this general rule there are exceptions.    It is manifest, therefore, that to render such an opinion admissible, it must come within the well-established exceptions.    It must be made to appear:

(1) That the witness has detailed the facts, within his personal knowledge, upon which the proposed opinion is based; and

(2) That the statement of such facts by the witness is sufficiently comprehensive as to be the basis of an intelligent opinion; and

(3) That the opinion of the witness was necessary for the information of the jury by reason of the fact that the entire surroundings could not be reproduced, so as to afford the jury the same opportunity of forming a correct opinion as when viewed by the witness; or,

(4) That the necessity of the case compelled the admission of the opinion testimony.

There is some difference of opinion among the authorities as to whether it is always necessary that the witness have detailed the facts upon which his opinion is asked.  See 3 Wig., Ev. (1st Ed.), § 1918.  But the decisions of this Court are unvarying in the requirement.  In *Jones v. Fuller,* 19 S. C., 66; 45 Am. Rep., 761, the Court said:

"It is necessary that the witness should first state the facts upon which he bases his opinion, where the facts are such as are capable of being reproduced in language."

In *Ward v. Charleston City R. Co.,* 19 S. C., 521; 45 Am. Rep., 794, the Court said:

"It is a general rule of evidence that opinions of witnesses are not competent, but to this there are several exceptions; for instance, experts may give opinions, and even ordinary witnesses, *after stating the facts upon which their opinions*

15—S. C. 140

*are founded,* may also state their opinions resting on the facts."

In this case the Court concludes as follows:

"Under the principles upon. which these cases were decided, we think the question propounded here was competent, especially as the witnesses were present when the accident occurred, and were speaking from the facts as they occurred within their sight and under their immediate observation."

In *Couch v. Railroad Co.,* 22 S. C., 557, the Court makes this statement: .

"The plaintiff also complains that the Judge erred in not allowing William Davis and other witnesses, after they had stated that the condition of the waterway, or heard it described by others, to go on and give their opinion as to the dangerous character of the place, and that prudence required that notice should have been given to one situated as the plaintiff was. The general rule certainly is that the mere opinions of witnesses are not admissible. There are some exceptions to the rule for particular reasons, but we do not think that any of them cover this case. The subject-matter was not of such character as to authorize the introduction of opinion from the necessity of the case."

In *Cothran v. Knight,* 45 S. C., 3; 22 S. E., 596, the Court, in an opinion by the present Chief Justice, said:

"The witness was not interrogated as to the facts upon which he based his opinion, although the case was one in which they could be 'reproduced and made palpable in the concrete to the jury' " Evidence excluded.

In *Virginia-Carolina Chemical Co. v. Kirven,* 57 S. C., 445; 35 S. E., 745, it was held (quoting syllabus):

"A witness may give his opinion, based on facts capable of reproduction in language, *after first stating such facts.*"

In *Easler v. Railroad Co.,* 59 S. C., 311; 37 S. E., 938, the opinion testimony was admitted upon the specific ground

that the witness had "previously given the facts upon which such opinion would be based."

In *Burnett v. Railroad Co.,* 62 S. C., 281; 40 S. E., 679, the Court, in admitting the testimony, said:

"The witness stated the grounds upon which he based his opinion, which thereby renders it competent as testimony."

In *Machen v. Telegraph Co.,* 72 S. C., 256; 51 S. E., 697, the Court, admitting the testimony, said:

"The testimony falls within the rule of the cases that hold that a nonexpert witness may give his opinion after stating the facts upon which it is based."

In *Henry v. Railroad Co.,* 93 S. C., 125; 75 S. E., 1018, the Court said:

"Exception 2 cannot be sustained as his Honor [correctly] ruled that a nonexpert witness could not give an opinion unless he had detailed facts to base it on."

It goes without saying that, if the witness must detail the facts upon which his proposed opinion is based, the statement must of necessity be sufficiently comprehensive to form the basis of a reasonably intelligent opinion. The most important element is that the testimony must not be superfluous. It is superfluous, if it is unnecessary, that is, not needed for the information of the jury. In this respect the admission of expert opinion and nonexpert or lay opinions rest upon the same basis. Expert opinions are admitted upon the ground of the superior knowledge or skill which the expert possesses; lay opinions are admitted upon the ground that "his facts cannot be so told as to make the jury as able as he to draw the inference." 3 Wig., Ev. (1st Ed.), § 1917. Both, therefore, are admitted on account of the superior prospect of the witness, necessary or at least helpful to the jury.

"Whenever inference and conclusions can be drawn by the jury as well as by the witness, *the witness is superfluous,*

and thus an expert's opinion is received because and when his skill is greater than the jury's, while a lay opinion is received because and whenever his facts cannot be so told as to make the jury as able as he to draw the inference." 3 Wig., Ev. (1st Ed.), § 1917.

"Whenever the point is reached at which the tribunal is being told that which it is itself entirely equipped to determine without the witness' aid on this point, his testimony is superfluous and is to be dispensed with." 3 Wig., Ev. (1st Ed.), § 1918.

In *State v. Summers,* 36 S. C., 479; 15 S. E., 369, it was held (quoting syllabus) :

"A witness having fully testified as to the language, gestures, attitude, and position of the parties to a homicide, the necessity that alone justifies nonexpert opinion evidence did not exist, and, therefore, there was no error in refusing to permit such witness to say whether he thought the defendant had cause to consider his life in danger from the deceased."

In *Dent v. Railroad Co.,* 61 S. C., 329; 39 S. E., 527, the testimony was admitted specifically upon the ground :

"The witness based his opinion upon facts within his own knowledge, which it would have been difficult fully to reproduce and make palpable before the jury."

In *Nickles v. Railroad Co.,* 74 S. C., 102; 54 S. E., 255, the Court said:

"These exceptions are intended to bring in question the ruling of the Circuit Judge in excluding the opinions of witnesses   *   *   *   *as to what caused the wreck* in which Mrs. Black was killed. These two witnesses, whose opinions were sought, had both testified as to all the facts which came within her knowledge, *but neither of them was an eyewitness to the occurrence. Neither one was present when the catastrophe occurred.* So, if their opinion as to the cause of the same could be given, it could only be given as experts."

In *Fitzgerald v. Manufacturing Co.*, 74 S. C., 232; 54 S. E., 373, the Court said:

"It is a cardinal rule that the evidence must be of such a character as not to fall within the range of common experience and observation, and, therefore, not to be intelligible to jurors without the aid of opinion."

In *State v. Stockman*, 82 S. C., 388; 64 S. E., 595; 129 Am. St. Rep., 888, the witness was asked:

"State, if your father had not killed him at the time he did, what would have happened?"

The Court, holding the testimony inadmissible, said:

"What the deceased was doing or threatening to do when he was slain was an issue, and the witness testified fully as to all the circumstances, the meaning of which could not be made plainer by his opinion, and the inference for the jury." from the circumstances was peculiarly for the jury."

In *Hand v. Power Co.*, 90 S. C., 267; 73 S. E., 187, the Court said:

"The rule is well settled that, when the matter or thing to which the evidence relates cannot be reproduced or clearly described to the jury, the wintess, though not an expert, may give his opinion, after stating the facts and circumstances upon which it is based."

In *Dodd v. Railroad Co.*, 95 S. C., 9; 78 S. E., 525, the Court, in admitting the testimony, said:

"The surroundings could not be reproduced, so as to afford the jury the same opportunity of forming a correct opinion as when viewed by the witness."

See, also, as bearing more or less directly: *State v. James*, 31 S. C., 218; 9 S. E., 844. *State v. Merriman*, 34 S. C., 16; 12 S. E., 619. *State v. Lee*, 58 S. C., 335; 36 S. E., 706. *Oliver v. Railroad Co.*, 65 S. C., 1; 43 S. E., 307. *Mauldin v. Railroad Co.*, 73 S. C., 9; 52 S. E., 677. *Cain v. Railroad Co.*, 74 S. C., 89; 54 S. E., 244. *Gosa v. Railroad Co.*, 67 S. C., 347; 45 S. E., 810. *Riser v. Railroad*

*Co.,* 67 S. C., 419; 46 S. E., 47. *State v. Hyde,* 90 S. C., 296; 73 S. E., 180. *McCown v. Muldrow,* 91 S. C., 528; 74 S. E., 386; Ann. Cas., 1914-A, 139. *Miller v. Railroad Co.,* 94 S. C., 388; 77 S. E., 1111.

If this statement, attributed to Huggins, had been offered as coming from his lips, as a witness for the plaintiff, its admission would have violated every condition essential to its validity as evidence. It did not purport to be based upon facts within his knowledge, for he admits that he did not see the accident and knew. nothing even of its immanence, until he had been told of its happening; he makes no statement of facts upon which such opinion may have been based; it does not purport to have even been made upon information received from others; and, lastly and conclusively, it did not purport to be an inference which the jury could not draw as well as he. If he could not have testified to it, it is necessarily irrelevant, and, under the authorities cited, cannot form the basis of impeachment.

It is impossible to affirm that the admission of this contradicting evidence was not prejudicial to the interests of the defendants. Huggins was not an agent of either of the defendants and his declarations were not binding upon them. The presiding Judge did not warn the jury that the testimony could be used only for the purpose of impeaching the credibility of the witness, as he should have done upon its admission. They may have believed the contradicting witnesses, that Huggins did make such a statement. and it is not improbable that it sunk into their minds as a declaration supporting the main contention of the plaintiff that the obstruction was the proximate cause of the collision. The admission was error, and prejudice is presumed. *Templeton v Railroad Co.,* 117 S. C., 44; 108 S. E., 363. The prejudice is apparent from the remark of the presiding Judge, "He was there and is telling what he saw," in spite of the fact that Huggins denied the statement, and testified that he

did not see the accident.   The rule, in my opinion, should be strictly enforced, on account of the extreme difficulty of impressing upon the jury the single purpose of a contradiction, the impeachment of the credibility of a witness, and that it cannot be used as substantive evidence, a tendency which the average juror is prone to indulge.

### ON PETITION FOR REHEARING

*Per Curiam.*   Petition dismissed.

MR. JUSTICE COTHRAN: I think, for the reasons stated in opinion herewith, that the petition should be granted.

MR. ACTING ASSOCIATE JUSTICE C. J. RAMAGE (concurring in dismissal of petition) : In addition to the order indorsed on the back of the original petition in this case, I wish to add a few points to the opinion of the Court filed by Mr. Justice Watts.

The first point I wish to make is in reference to the criticism of the Circuit Judge in adding the words "unnecessary or" to the request to charge of the defendants.   I think the addition of these words not reversible error.   Webster defines these words as follows:

"Unnecessary: Not required under the circumstances; useless; needless."

"Unreasonable: Irrational; immoderate; exorbitant."

I think the jury ought to have understood and did understand the Circuit Judge in the sense above given by Webster, and not in the sense that the law imposed on the defendants the burden of showing an absolute necessity.   It is further my judgment that his Honor put the matter in a way that cut rather in favor of the defendants, when he made the request to read that the "obstruction is unnecessary or for an unreasonable length of time considered with reference to existing circumstances."

"A delay may be 'necessary,' and yet 'unreasonable,' if it is made necessary by the negligence of the party chargeable

therewith, and such delay is in legal contemplation 'unreasonable,' however imperatively necessary it may have been. In an action for delay in the shipment of cattle, an instruction holding the carrier liable only in case the delay was both unreasonable and unnecessary was erroneous, since it would be liable if the delay was unreasonable, though rendered necessary by its negligence." *Rogers v. Texas & Pacific Railroad Co.* (Tex. Civ. App.), 94 S. W., 158, 162.

So it appears that this addition, as stated above, was in favor of the defendant; as the Texas Court shows that, if the delay was necessary, no matter from what cause the necessity arose, yet the defendants would be well within their rights under the charge of Judge Townsend, even though the said delay at the same time was unreasonable. Furthermore, the charge of the Judge below is sustained by the following authority:

"But a railroad is liable for injuries caused by reason of such obstruction, when it amounts to negligence, as where it allows its train or cars to remain on the crossing unnecessarily, or for an unreasonable length of time, by reason of which injuries are received by one who attempts, with due care, to cross or go around the obstruction." 22 Ruling Case Law, p. 994.

The next matter we shall take up is the question as to whether or not the Circuit Judge erred in refusing a request to charge by defendant, which, among other things, contained this expression, "That these defendants could not reasonably have anticipated the collision would result from such obstruction," and in substituting the words, "Some injury to travelers on the highway." It does seem that the action of Judge Townsend carries its own justification on its face. To allow a party guilty of negligence or willfulness which injures some one else as a proximate cause to escape, unless a person of ordinary prudence and foresight could have foreseen the particular injury inflicted,

would be tantamount to saying that the guilty party could not be held liable; for in most cases it is impossible to foresee the thing that actually happens, no matter how culpable the guilty party may be. The Judge's charge was in strict accord with the decided weight of authority on this subject.

"In order, however, that a party may be liable for negligence, it is not necessary that he should have contemplated, or even been able to anticipate, the particular consequences which ensued or the precise injuries sustained by the plaintiff. It is sufficient, if by the exercise of ordinary care, the defendant might have foreseen that some injury would result from his act of omission, or that consequences of a greatly injurious nature might have been expected. It is likewise unnecessary to the constitution of negligence that the defendant should have been able to anticipate the form of the injuries sustained or the particular manner of their occurrence." 21 American & English Encyclopedia of Law (2d Ed.), p. 487.

This is the universally accepted doctrine, and is the law of South Carolina, and the Judge below properly left the matter of proximate cause to the jury under the facts of this case.

The next point is: That his Honor did not charge that:

While "violation of the statute, although declared negligence *per se,* must be shown to have been the proximate cause of the injury, and the burden of showing this devolves upon the plaintiff throughout."

It is clear to me that the Judge did not err as charged, but that he clearly left the matter of a proximate cause to the jury, and plainly stated to the jury that the plaintiff must prove by the greater weight of the evidence that the violation of the statute was a proximate cause of the injury. See folios 929, 931, 937, 938, 945, 953, 983, and other

statements to the same effect. (The reporter will preserve in reporting the charge the marginal figures, so that these excerpts may not have to be set out twice.)

His Honor's charge is also borne out by the following and other excerpts from *Lawson v. Railway Co.*, 91 S. C., 201; 74 S. E., 473:

"Where it appears that an injury occurred at a crossing and that the statutory signals were not given, there arises a presumption that the failure to give the signals, which is negligence *per se*, contributed to the injury."

So we see no basis in the charge itself for the objection thus urged to it. Under the facts in this case, all this was properly left to the jury.

The point is further made that the majority, through the opinion of Mr. Justice Watts, did not consider the fifth exception. It has never been deemed essential to name every exception by number in writing an opinion. Such an ironclad rule would destroy the beautiful symmetry of many of our great decisions. It is only necessary to consider and decide the questions really determinative of the appeal.

Now, Justice Watts wrote a full and adequate opinion in this case, and one that fairly covered all questions arising on this appeal. It has formerly been deemed adequate for the opinion to show in any decisive way clearly how the case was decided, and the reasons therefor. This may be done by reference to other decided cases, to an extract from a text-book, to a decree, or charge, or sometimes merely overruling the exceptions. To lay down any "hard and fast" formula would be to stifle the infinite variety that we find, even among the best decisions of the Courts, and would be a bane to originality in the building of judicial opinions. All this must depend upon the case, the nature and training of the judge, and many other factors too numerous to mention. If the Court makes it clear what disposition has been

made of the case, and ·the reasons for its action, nothing more is essential. Sometimes a short opinion, that hits the mark, will be better than one of more extended length. However, this is largely a matter of taste, and the old Latin maxim, "*De gustibus non est disputandum*" ought to suffice. Judge Watts' opinion was and is eminently satisfactory to the majority of the Court, and leaves no doubt whatever as to the disposition the Court had made of the case. And, too, to set all matters at rest, he winds up his opinion in these words: "All exceptions are overruled .and judgment affirmed." This includes the fifth as well as all other exceptions. ·

The point is next made that there is no allegation in the complaint charging wrongdoing to Camp Manufacturing Company, except as made in reference to its engineer, Arthur Pulley, who was exonerated by the verdict of the jury. An inspection of the pleadings will not bear out this contention. The complaint alleges:

"Defendant Camp Manufacturing Company and its engineer, Arthur Pulley, with the consent, acquiescence, and approval of its codefendant, Atlantic Coast Line Railroad Company, had placed and kept a train of cars on a track of Atlantic Coast Line Railroad Company and across the public highway and crossing of said road, obstructing the crossing of said highway and said railroad unnecessarily, and for an unreasonable length of time, and without any safeguards, lights, or' warnings to the public of such obstruction. The said obstruction was in violation of the laws of the State· and the ordinances of the town of St. Stephens, in which it occurred."

Arthur Pulley and Camp Manufacturing Company are both charged here, and it is hard to see how any one could fail to see this.

The Camp Manufacturing Company in its answer admits that its train was temporarily on a side track, and does

not in its answer deny responsibility for the train's being there. In other words, Camp Manufacturing Company admits that the train was there, put there by them "by permission of said Atlantic Coast Line Railroad Company," and does not repudiate the action of the parties who put the train here, but attempts to justify itself on other grounds. Hence it would be unfair for the Camp Manufacturing Company to make its fight all through the case, justifying the fact of blocking the street and claiming that the train's being there was not wrongful, and then, when there was an adverse verdict against it, claim that it was not responsible, but that its agent, Arthur Pulley, was at fault, *after a favorable verdict had been rendered in favor of Pulley.*

This position would commend itself more to a sense of justice, had it been taken by the Camp Manufacturing Company while the case was being tried; but it comes suspiciously late after Pulley is out of the case. In other words, the Camp Manufacturing Company took the position before the jury that Pulley was not liable and now, on appeal, it attempts to exonerate itself by throwing all the blame on Pulley, *when it is too late* to hold Pulley.

It is further contended that nothing is alleged in the complaint about there being an insufficiency of help on the Camp Manufacturing Company's train. I think that the absence of sufficient help in the train crew would be admissible under the following allegations of the complaint: "Without any safeguards, lights, or warnings to the public of such obstructions." The following matters were brought out in the testimony: The crossing was blocked completely, and that this was habitual; that it was done by Camp Manufacturing Company by direction of the Atlantic Coast Line Railroad Company's representative on the spot; that the train backed with no rear light or flagman; that the train remained over the crossing and that the two flat cars were calculated to make one traveling the road to think that

the crossing was not blocked till one got right up to the track; that there was an insufficiency of help; that the light on the Camp engine was shut off; that the blocking was un-necessary and for an unreasonably long time; that the night was dark, cold, and rainy. There are other facts to go to the jury on the allegations of the complaint, and it is not neces-sary to rehearse them here. Even if the jury did find no verdict against the engineers of the two trains personally, yet these engineers were agents and servants of the two de-fendants, respectively, and their acts would still be imputed to the masters, if the jury under the testimony saw fit to do this.

It is suggested that the two defendants against whom verdicts have been found are being deprived of property without due process of law. This expression, so often invoked by litigants in the last desperate struggles to avert an adverse decision, simply means "the law of the land," Bouv., Law Dict. (1914 Ed.), p. 947. The following cases have laid down the law substantially as the rule has been ap-plied in the opinion of Mr. Justice Watts: *Littlejohn v. Railway,* 49 S. C., 12; 26 S. E., 967. *Fletcher v. Railway,* 57 S. C., 205; 35 S. E., 513. *Mack v. Railway,* 52 S. C., 323; 29 S. E., 905; 40 L. R. A., 679; 68 Am. St. Rep., 913. *Nohrden v. Railroad Co.,* 59 S. C., 87; 37 S. E., 228; 82 Am. St. Rep., 286. *Mercer v. Railway,* 66 S. C., 246; 44 S. E., 750. *Burns v. Railway Co.,* 61 S. C., 404; 39 S. E., 567. *Hutto v. Railway Co.,* 61 S. C., 495; 39 S. E., 710. *Edwards v. Railway Co.,* 63 S. C., 271; 41 S. E., 458. *Davis v. Railway Co.,* 63 S. C., 370; 41 S. E., 468. *Kirby v. Railway Co.,* 63 S. C., 494; 41 S. E., 765. *Bishop v. Rail-way Co.,* 63 S. C., 532; 41 S. E., 808. *Cooper v. Railway Co.,* 65 S. C., 214; 43 S. E., 682. *Mercer v. Railway Co.,* 66 S. C., 246; 44 S. E., 750. *Gosa v. Railway Co.,* 67 S. C., 247; 45 S. E., 810. *Osteen v. Railway Co.,* 76 S. C.,

368; 57 S. E., 196. *Sanders v. Railway Co.,* 93 S. C., 543; 77 S. E., 289.

We refer especially to *Folk v. Seaboard Air Line R. Co.,* 99 S. C., 284; 83 S. E., 452. We have not named any of the recent cases to the same effect, but most of these were decided by men long gone to their reward, and the crossing law was laid down time and again by these men, and it is no new doctrine that we are laying down here. Legislatures and Courts in practically every civilized country have recognized the principles reiterated in the present case. The humblest citizen traveling along the highway is under the protecting arm of the law, and it would be a sad day for any land or country in which the Courts failed to render every man his due.

We are satisfied that the majority opinion is based on both law and justice, and the petition for a rehearing ought to be and is dismissed.

MR. CHIEF JUSTICE WATTS and MESSRS. JUSTICES BLEASE and STABLER concur.

MR. JUSTICE COTHRAN (dissenting from dismissal of petition) : I think that the petition for a rehearing in this case should be granted, for the reasons stated in the petition, and for the reasons which I shall herein submit, supplementary to the dissenting opinion which has been filed by me.

In the opinion of Mr. Justice Watts I do not think that he has at all answered the principal objections urged against the validity of the judgment in this case, and this I say with the greatest respect for his discriminating sense of justice. The opinion, as I see the law, does not correctly state the rights and duties of a railroad company in respect to the obstruction of a street, at a railroad crossing, with its standing cars. It is manifestly of the greatest moment to such corporations, in the operation of trains over hundreds of crossings, that these rights and duties be clearly and correctly defined. Assuming the right, in a given case, of the company to lay its track upon its right of way, and

across streets that traverse it, a situation of correlative rights and duties is created. The public has the right to the use of the street or highway, and the company has the right to the use of its track at·the point of intersection. Each must exercise this right with due regard to that of the other. Upon the principle of *"sic utere tuo,"* the *reasonableness* of such use is the test, and not the *necessity* therefor.

The defendants requested the following charge:

"The use of a railroad side track for shifting cars or loading and unloading freight is a lawful use, and cannot be considered negligence or willfulness, even if a highway is temporarily·obstructed thereby, unless such obstruction is for an unreasonable length of time, considered with reference to the existing circumstances."

According to my conception, that request correctly stated the law, and is entirely in harmony with the principle by which the duty of the company is to be measured, *"sic utere tuo ut alienum non lædas.* The Circuit Judge refused to give the charge as requested, without the modification produced by the insertion of the words *"unnecessary or,"* the effect of which was to impose the burden upon the company of showing not only that the obstruction continued only for a reasonable time, but that it was a matter of *necessity,* and that, if the plaintiff showed *either* that it was not a matter of necessity, *or* that it continued for an unreasonable time, he made out a case of negligence against the company. It is easily conceivable that a crossing may be blocked for only a reasonable time, under circumstances which do not present a case of necessity, as I endeavored to demonstrate·in my dissenting opinion. At the same time the question whether the blocking was necessary or not may well be considered in determining the other question of reasonableness.

I do not contend that the matter is controlled by Section 2922, Code of 1922, which prescribes a penalty for allowing cars to obstruct a street or highway for a longer period

than five minutes after notice to remove them, and concede
that, irrespective of this statute, the duty at common law
remains not to obstruct a crossing unreasonably; but I do
not find anywhere that the right to use this part of a track,
which with the right of way belongs to the company, for
the uses of the company, is limited to cases of *necessity.*

"And a temporary obstruction,   *   *   *   by leaving cars
in or across a street *for an unreasonable time,* may constitute
a nuisance."   3 Elliott, R. R. (3d Ed.), § 1440.

"If a railroad company obstructs a highway *for an un-
reasonable length of time,* or for a longer time than the law
permits, unless it is without fault, the railroad company
thereupon becomes a trespasser." *Littlejohn v. Railroad
Co.,* 49 S. C., 12; 26 S. E., 967.   *Walker v. Railroad Co.,*
77 S. C., 161; 57 S. E., 764; 12 Ann. Cas., 591.

(A more accurate statement, I think, would have been
that the company thereby will be held to have created a
nuisance.)

The opinion of Mr. Justice Watts in several places repeats
the modification, holding that the *unnecessary or unreason-
able obstruction* constitutes negligence.

I do not think that there can be the shadow of a doubt
that the Circuit Judge committed error in his charge as to
what constitutes the proximate cause of an injury.   The
defendants requested the following charge:

"Even if you find from the evidence that the defendant
Camp Manufacturing Company and its engineer, Arthur
Pulley, were negligent and willful in obstructing the cross-
ing, but that these defendants could not reasonably have
anticipated that the *collision* would result from such obstruc-
tion, then I charge you that under such circumstances such
obstruction would not be a proximate cause of the collision,
although you find the same to be a remote cause, and your
verdict must under such circumstances be in favor of these
defendants."

I think that this request was in exact conformity with the law of proximate cause. The Circuit Judge, however, refused to charge it without the modification produced by striking out the word *"collision"* and inserting the words *"some injury to travelers on the highway,"* and specifically charging:

"In order that an injury be the proximate result of an act, it is not necessary that the actor should have foreseen the particular consequences or injury which resulted. *It is enough if he should have foreseen that his act of negligence would probably result in injury of some kind to some one to whom he owes a duty."*

If a person commits an act, and should have foreseen that his act would probably result in injury of some kind to some one to whom he owes a duty, such act will be held to have been an act of negligence. It will not be held to be *actionable* negligence, unless the particular injury is shown to have been a result reasonably to have been anticipated from the negligent act. The tests of *negligence* and *proximate cause* are not the same. I do not contend that the actor should have foreseen the particular injury; the question is, not alone whether the act was negligent, which may be assumed, but whether the particular injury was one which naturally flowed from the act, and for that reason should have been foreseen by a person of ordinary prudence. To say that the act was the proximate cause, *because it was an act of negligence, is necessarily* to preclude the further vital inquiry whether it was the proximate cause of the injury.

In *Glenn v. Railroad Co.,* 21 S. C., 466, the Court said:

"Applying these principles to the case under consideration, in which the negligence imputed to the defendant was in failing to furnish a headlight for the engine, we find that the testimony as to such negligence was quite sufficient, as to that point, to send the case to the jury; but we look in vain for any evidence whatever tending to establish the

equally material and necessary point· that the injury complained of was in any way the result of such negligence."

In *Adkins v. Railroad Co.,* 27 S. C., 71; 2 S. E., 849, the Court said:

"To recover damages for an injury done .to a party by another, the plaintiff must not only produce evidence of negligence by such other, but also that the injury compained of was the result of such negligence."

In *Petrie v. Railroad Co.,* 29 S. C., 303; 7 S. E., 515, the Court said:

"It is not sufficient to make out plaintiff's case that there should be simply evidence of defendant's negligence, but that there must also be some evidence that the injury complained of was the result of such negligence."

In *Barber v. Railroad Co.,* 34 S. C., 444; 13 S. E., 630, the Court said:

"It was not sufficient, to sustain a case of this kind, to show negligence, but there must be also some evidence showing that the injury complained of was the result of such negligence."

In *Ruff v. Railroad Co.,* 42 S. C., 114; 20 S. E., 27:

"It was not only necessary to introduce testimony tending to show that the injury to the horse was the result of such negligence."

So it is clear that the proof of negligence is one thing, and proof that the negligence was the proximate cause of the particular injury is an entirely different one. As a matter of fact it was not at all necessary for the plaintiff to prove that an injury "of some kind to some one" would probably result from the unreasonable obstruction of a crossing; the law stamps it as a negligent act. The charge necessarily withdrew from the jury the issue whether the negligence was the proximate cause of the collision.

Mr. Justice Watts, in disposing of this objection, quotes from *Sandel v. State,* 115 S. C., 180; 104 S. E., 567; 571 (13 A. L. R., 1268), as follows:

"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted. It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one."

By reference to the opinion from which this quotation is made (somewhat garbled in the typewritten copy of Mr. Justice Watts' opinion), the rule to which reference is made appears in the defendant's request to charge:

"An injury that could not have been foreseen or reasonably anticipated as the probable result of an act of negligence is not actionable,"

—as to which the Court remarked:

"As a general statement of the law, the request was correct. The same request was charged in *Miles v. Telegraph Co.*, 55 S. C., 403, 420; 33 S. E., 493, and approved by this Court."

There follows the statement:

"But, in application, the rule may need explanation; for instance, it is not necessary to show that a person charged with negligence should have foreseen the particular consequences or injury that resulted,"

—as to which there can be no objection. It is followed by the statement:

*"It is enough that he should have foreseen that his negligence would probably result in injury of some kind to some one,"*

—a declaration absolutely inconsistent with the rule which had been previously announced, and making the test of proximate cause the existence of negligence.

In the case of *Dallas v. Maxwell* (Tex. Com. App.), 248 S. W., 667; 27 A. L. R., 931, cited by Mr. Justice Watts, as sustaining the charge, the Court said:

"Whether injury might result to some one whose relation to the act or omission is wholly dissimilar or unanalogous

to that of the injured party is a purely abstract and immaterial question."

In the case of *Wilson v. Railroad Co.*, 30 N. D., 456; 153 N. W., 429, L. R. A., 1915-E, 995, also cited by Mr. Justice Watts, the precise distinction for which I am contending is sustained. The Court says:

"There can be no question that the defendant must have anticipated that the fire would be injurious *to some one.* The act, therefore, was *negligent* and gives rise to a cause of action. The only question to be determined is whether the injury to the plaintiff was *a proximate result* of that act. If so, damages can be recovered therefor, even though they were not anticipated."

The test of proximate cause is thus stated by the Supreme Court of the United States:

"In order to warrant a finding that negligence * * * is the proximate cause of an injury, it must appear that the injury was the natural and probable consequence of the negligence or wrongful act, and *that it ought to have been foreseen* in the light of the attending circumstances," not that any other injury ought to have been foreseen. *Milwaukee, etc., R. Co. v. Kellogg,* 94 U. S., 469; 24 L. Ed., 256.

"One is held responsible for all the consequences of his act which are natural and probable, and ought to have been foreseen by a reasonably prudent man." *Atchison, etc., R. Co. v. Calhoun,* 213 U. S., 7; 29 S. Ct., 321, 323 (53 L. Ed., 671).

In the opinion of Mr. Justice Watts, no attention at all is given to the exception assigning error in the charge that a failure of a railroad company to give the statutory signals for a highway crossing raises a presumption that such failure was the proximate cause of a collision which may have occurred.

The Circuit Judge charged as follows:

"When the signals are not given, as and in the manner provided by statute, and an injury occurs at the crossing

of a railroad and public highway, a presumption would arise that the failure to give the signals is the proximate cause of the injury. But such presumption would be rebuttable by evidence, and the jury should consider any and all evidence that may be in the case, in determining the question of proximate cause."

The defendant Coast Line excepted to this charge upon this ground:

"This was error, since the violation of a statute, although declared negligence *per se,* must be shown to have been the proximate cause of the injury, and the burden of showing this devolves upon the plaintiff throughout."

After some variant decisions, this Court has finally·settled upon the doctrine declared in *Whaley v. Ostendorff,* 90 S. C., 281; 73 S. E., 186, in which it is distinctly held that, while the violation of a city ordinance is negligence *per se:*

"The fact that there was negligence *per se* does not, however, tend to show that such negligence is actionable. The question whether negligence is actionable depends upon the further question whether such negligence was the direct and proximate cause of the injury."

The latest deliverance upon the subject is the case of *Cirsosky v. Smathers,* 128 S. C., 358; 122 S. E., 864, in which it is held:

"That the violation of a statute, although declared negligence *per se,* must be shown to have been the proximate cause of the injury, or at least a contributing proximate cause, is abundantly shown by the authorities and sustained by common sense ·and justice."

In the last-named case an array of authorities is cited, sustaining the proposition. The *reason* for the rule, which in every case is the *anchor* of the rule, is thus expressed in the *Cirsosky case:*

"The only difference between an act which the law declares negligence (that is, an act which is negligence *per se*), and an act of negligence, is in the particular branch of the legal

machinery of the trial which adjudicates the question and characterizes the act; in the one case the Judge, and in the other the jury. The further essential to liability (the causal relation between the act and the injury) is unaffected by the distinction. It is just as necessary to show that the act declared negligence *per se* was the proximate cause of the injury as to show that an act so declared by the jury was such cause."

As Mr. Elliott says in 3 Elliott, Railroads (3d Ed.) § 1648, p. 503:

"Ordinarily the omission of the statutory duty [of giving the required signals on approaching a crossing], is negligence *per se,* and, where the omission is established, such negligence arises as a matter of law; but such omission by no means conclusively establishes the company's liability, for the injured party must have been free from fault, and the negligence of the company must have been the proximate cause of the injury in order to enable him to recover. * * * In no event is the omission to give the statutory signals sufficient of itself to make out a case, for there must be evidence showing that it was the proximate cause of the injury. * * * The consequences of an act or omission do not of themselves show that an act is or is not negligent, and it is not necessary, in order to render an act or omission negligent, that it produce some disastrous result. Negligence *per se* may work no serious injury to any person, not because it is not wrongful in itself, but because no one is in a position at a particular time to be injured. The liability of the wrongdoer to the person injured, is, however, generally dependent upon the element of proximate cause."

"While this statute subjects railroad companies to liability for the damages occasioned by its violation, it does not confer a right of action upon the person injured, unless the omission of the signals caused the disaster." *Horn v. Railroad Co.* (C. C. A.), 54 F., 301.

"It is evident from this language that the failure to give signals must have occasioned the accident—that is, must have been the proximate cause of it—before a recovery can be had. * * * Before, therefore, the plaintiff can recover because the signals were not given, he must cause it to appear that this failure of duty brought about the disaster." *Pennsylvania Co. v. Rathgeb*, 32 Ohio St., 66.

See, to the same effect, cases cited in note 37 to Section 1648, 3 Elliott, R. R. (3d Ed.), p. 505, from the Courts of Alabama, Colorado, Delaware, Illinois, Indiana, Kansas, Maryland, Missouri, Ohio, Texas, Iowa, Kentucky, Louisiana, Utah, Virginia, and Wisconsin all in accord with the rule declared by this Court as late as April, 1924, in the *Cirsosky case*.

Section 4925 of the Code of 1922 prescribes two essential elements to recovery under the signaling statute, Section 4903; the neglect to give the signals *and* that such neglect contributed to the injury, which has often been held *contributed as a proximate cause*. It is familiar law that one who claims the benefit of a statutory remedy must bring himself within the statutory condition. As stated above, this exception has not been considered in the leading opinion, in disregard of Article 5, Section 8, of the Constitution, mandatory in all its terms, that:

"Every point made and distinctly stated in the cause and fairly arising upon the record of the case *shall* be considered and decided, and the reason thereof shall be concisely and briefly stated in writing and preserved with the record of the case."

The verdict of the jury exonerated the engineer of the Camp Company's train and the engineer of the railroad company's train from all negligence in connection with the collision. In other words, it is an adjudicated fact in the case that Pulley, the engineer of the Camp train, *did not* place and keep a train of cars across the street, obstructing the railroad crossing unnecessarily and for an unreasonable

time, *and* without safeguards, lights, or warning to the public *of such obstruction,* in violation of law. Notwithstanding this specific and unalterable adjudication, it is sought to hold the Camp Company liable upon the principle, as stated:

"That where the servant or employee sued was not the only agency, *under the pleadings* and evidence, which could have committed the wrong, then acquittal of the servant is not a discharge of the master."

There can be no doubt of the correctness of this proposition; but in conformity with its terms the allocation of such other agency, to whose participation the wrong may be ascribed, must be justified by the pleadings and the evidence. I do not think that it can be done as to either, in this case.

This question was last considered by this Court in the case of *Durst v. Railroad Co.,* 130 S. C., 165; 125 S. E., 651 (decided Dec. 10, 1924). The Court there held that, even in a case involving the relation of carrier and passenger, *where there is no general allegation of negligence against the carrier* but only a specific charge against an employee, with the resulting imputation of negligence upon the carrier, there could be no recovery based upon the presumption of negligence against the carrier, or upon proof of negligence of some other employee of the carrier.

"In the absence of a general allegation of negligence on the part of the master, no valid reason appears for departing from the salutary rule that the plaintiff must rely upon the specifications made"—citing numerous authorities sustaining that declaration.

The allegation of the complaint, so far as the Camp Company is concerned, reads thus:

"Defendant Camp Manufacturing Company and its engineer, Arthur Pulley, * * * had placed and kept a train of cars on a track of Atlantic Coast Line Railroad Company and across the public highway and crossing of said road, obstructing the crossing of said highway and said railroad

unnecessarily and for an unreasonable length of time, and without any safeguards, lights, or warning to the public of such obstruction."

This is clearly not a general charge of negligence against the Camp Company, but a specific charge against its engineer in unreasonably obstructing the crossing and without safeguards, lights, or warning to the public of such obstruction, with the resultant imputation of negligence to the Camp Company—acts of commission and omission of the engineer. It manifestly was not intended to charge that, after the engineer had obstructed the crossing, there was present negligence on the part of the company in not putting out the safeguards, lights, and warnings, for it could not have been cognizant of the act of the engineer. Such being the case, the plaintiff, concluded by the specific allegations of negligence on the part of the engineer, had no right to recover upon any other act of negligence, either of the Camp Company or of some other servant of the company than that of the engineer.

It is an equally adjudicated fact in the case, by reason of the verdict in favor of the engineer of the passenger train, that he did not operate the train at a high, excessive, and dangerous rate of speed, and that he did not operate it without proper or adequate lookout, safeguards, and warnings, and without giving any proper or adequate signals of its approach. The allegations of the complaint in regard to these matters do not contain a general allegation of negligence against the railroad company, and for the same reason, as above stated in reference to the Camp Company, the plaintiff is confined to the specific allegations of negligence on the part of the engineer, except that it is also specifically alleged that the railroad company acquiesced in, consented to, and approved of the act of the Camp Company and its engineer in obstructing the crossing.

I think, therefore, that it is clear that the allegations of negligence against the railroad company, in reference to the

operation of the train by the engineer, go out of the case, by reason of the exoneration of the engineer in the verdict of the jury, and that the plaintiff is confined to the remaining act of negligence charged to the railroad company by reason of its alleged acquiescence in, consent to, and approval of the conduct of the engineer of the Camp train in unreasonably blocking the crossing without safeguards, lights, and warnings to the public of the obstruction.    Nothing else is charged against the railroad company.

I really do not think that the matter of acquiescence in the act of the engineer is of any consequence in the case at all.    It is manifest that the railroad company allowed the Camp Company, for the mutual benefit of both, to connect their spur track with the side track which ran close to the warehouse, and to operate their train upon that side track. The railroad company thus became practically a guarantor of the proper operation of trains on that side track, so far as the public was concerned.    1 Elliott, R. R. (3d Ed.), § 541.    If, therefore, the Camp Company negligently obstructed the crossing, and one was injured as a proximate result of such obstruction, the railroad company, as well as the Camp Company, would be responsible in damages therefor.    So that it makes no difference whether Clintworth, the station agent of the railroad company, advised Pulley that he could block the crossing for 10 minutes, or not, if as a matter of fact Pulley did block the crossing with his flat cars an unreasonable length of time, and failed to take the alleged proper precautions to warn the public of the obstruction, and the plaintiff was injured as a proximate result of such acts of commission and omission.

The real questions therefore, are whether, as the case stands, regardless of the alleged directions of Clintworth, it has been established that Pulley was negligent in the matters complained of, and, if so, was the plaintiff injured as a proximate result thereof?    As to those questions the answers must be the same.    The jury has settled the questions as to

Pulley's negligence.  If Pulley was not negligent, the Camp Company was not; if the Camp Company was not negligent, the railroad company was not.

But, assume for the purpose of argument that Pulley was negligent as alleged, the vital question is:  Did the negligent obstruction of the crossing, as a proximate cause, produce the collision between the passenger train and the automobile?  Ordinarily, of course, the issue of proximate cause is one for the jury; but where the facts are all admitted, or not in controversy, and only one reasonable inference can be drawn from them, the issue is for the Court.

I can add but little to what I have said upon this question in my dissenting opinion.  Under the settled rules of proximate cause, before the negligent obstruction of the crossing can be considered the proximate cause of the collision, the conclusion must be drawn that the intervening causes, the failure of the railroad engineer to give the signals for the crossing and the consequent entry of the occupants of the automobile upon the crossing, were both the probable and natural results, which should have been foreseen by the engineer of the Camp train.  If, as a matter of fact, so found by the jury in the exoneration of the engineer of the passenger train, the signals were given, the entry upon the crossing was an intervening efficient cause, without the semblance of an excuse, amply sufficient to break the continuity between the act of obstruction and the collision.  If, as claimed by the plaintiff, the engineer of the passenger train failed to give the statutory signals, and that the occupants of the car drove upon the track without knowledge of the approaching train, then unquestionably the neglect of the engineer was an intervening efficient cause of the collision, amply sufficient to break the continuity between the act of obstruction and the collision.  It could hardly be contended that the obstruction caused the engineer to neglect his duty; if not, there could have been no causal connection between the two, a perfectly plain case of an independent intervening

242   MILLER, ADMINISTRATOR, v. A. C. L. R. Co.

cause. See *Green v. Railroad Co.*, 131 S. C., 124, at page 132; 126 S. E., 441, 443 (38 A. L. R., 1448), where the following quotation from Cooley is made:

"If the original wrong only becomes injurious in consequence of the intervention of some distinct wrongful act or omission by another, the injury shall be imputed to the last wrong as the proximate cause, and not to that which was more remote."

It seems to me that the case of *Foster v. Union*, 129 S. C., 257; 123 S. E., 839, is conclusive of the matter. At page 269 (123 S. E., 843) it is said:

"Obviously, the foresight which the law imputes to a tort-feasor cannot extend to consequences brought about by the intervention of a responsible human being, where the act of the intervener breaks the chain of causation between the original wrong and the injury complained of, and is in itself sufficient to constitute an efficient, responsible cause of an injury. * * * In that situation we think the act of the father was such an efficient, intervening, responsible cause of the plaintiff's injury as would as a matter of law make of that act the proximate cause of the injury, and the alleged negligent placing of the wires in Lawson Avenue merely the condition by which the injury was made possible, and not a concurring proximate cause thereof."

A very clear statement of the rule appears in the case of *Steenbock v. Country Club*, 110 Neb., 794; 195 N. W., 117:

"It is not sufficient that the negligence charged furnishes only a condition by which the injury is made possible, for if such condition causes an injury by the subesquent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury."

So far, then, as the obstruction being the proximate cause of the collision is concerned, it is absolutely immaterial whether the passenger train was properly operated by signals, lookout, and warning, or not. If it was not, the neglect was

an intervening efficient cause of the collision; if it was, the inexcusable entry upon the track was an intervening efficient cause neither of which could have been connected in a causal degree with the obstruction.

The opinion of Mr. Justice Watts declares that there was evidence tending to show that the railroad company provided no lights at the street crossing; that it had no flagman there to warn approaching travelers of the presence of the obstructing cars; that the Camp Company was operating its train in violation of Section 4898, which requires the presence of one brakeman on the last car of a freight train. It is a sufficient answer to these suggestions that no such acts of negligence are alleged in the complaint; as to the railroad company, the complaint does not count upon a breach of duty on its part to safeguard, light, or warn. It only alleges that it acquiesced in, consented to, and approved of the alleged delinquencies of the Camp Company, through its engineer—delinquencies which the verdict has established did not exist.

Mr. Justice Watts summarily dismisses the objection to the testimony of Pinckney, detailing, in reply to the denial of Huggins, the declaration of Huggins, who was not a party to the suit nor an employee of either defendant, to the effect that the collision would not have occurred if the Camp Company had not obstructed the crossing, with a quotation from the case of *Smoak v. Martin,* 108 S. C., 474; 94 S. E., 869:

"We shall not reverse a judgment because some questionable testimony was allowed, if questionable it was, where there is a large sufficiency of competent testimony to support the verdict."

In the first place the testimony of the witness in that case was held admissible; it was not even *questionable.* In the case at bar the testimony was upon the vital point in the case, and was not simply questionable, but absolutely inadmissible and exceedingly hurtful. There was not only not

a "large sufficiency of competent testimony to support the verdict," or to sustain the contention that the obstruction was the proximate cause of the collision, but abundant testimony to show that it was not and could not possibly have been.

I give notice that, if the petition for a rehearing is not granted and the Court declines to consider the fifth exception of the appellant railroad company, in violation, I respectfully submit, of the Constitution of this state as above indicated, I shall ask that the Court *en banc* be called to the assistance of this Court in the final decision of this case. If that be denied, I am assured that the property of the defendants will be taken from them without due process of law, in violation of the Constitution of this State and of the United States.